IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
        *Plaintiff,*

v.                                      Case No. **2:16-cr-20032-JAR**

LORENZO BLACK,
KARI CARTER,
ANTHON AIONO,
ALICIA TACKETT,
CATHERINE ROWLETTE,
DAVID BISHOP,
        *Defendants.*

### Memorandum in Support of
### Proposed Order to Appoint a Special Master

    The defense proposed Order to Appoint a Special Master (attached) is designed to deal with the immediate discovery issues in this case and related cases; to allow for fact-finding as to past and current practices that may have resulted in Sixth Amendment violations; and to recommend appropriate actions and remedies available to this Court.

    The Court has the authority to appoint a Special Master both by Fed. R. Civ. P. 53 and under its inherent power to manage litigation. Based on the government's response, D.E. 110, the government seeks an Order authorizing a Special Master to perform a very narrow set of clerical tasks. Thus, no consent to the scope of the Special Master has been

1

reached by the parties. The Court, however, may order a Special Master, even with no consent, if the Special Master is to hold trial proceedings and make or recommend findings of fact if the appointment is warranted by some exceptional condition.[1] Also, the Court may appoint a Special Master, without consent of the parties, to address pretrial and post-trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.[2]

**Exceptional Conditions**

Several exceptional conditions exist in this case to justify the proposed scope of the Special Master inquiry:

First, the recording, both by video and audio, of protected attorney-client communications of pretrial detainees has been established and was previously unknown to the Court or to the defense. The practice and purpose of these recordings, the time-span, the facilities that engaged in these recordings, and the distribution of these recordings to any USAO or agent, present an exceptional condition that requires the broad inquiry and authority of a Special Master.

---

[1] See Fed. R. Civ. Pro. 53(a)(1)(B)(i).
[2] See Fed. R. Civ. Pro. 53(a)(1)(C).

Second, the USAO subpoenaed and attempted distribution video recordings protected attorney-client communications and actually distributed of audio recordings of protected attorney-client communication. To date, the USAO's knowledge, intent, and purpose in obtaining these recordings is unknown; the manner in which it obtained protected attorney-client phone calls is still unknown; the frequency and breadth of this practice in other cases is not yet known. This qualifies as an exceptional condition and an area of inquiry that cannot be completely and timely assessed by the Court.

Third, the government's attempt to actually use the subpoenaed video recordings of specific attorney-client meetings, and the content of those recordings, to force a defense attorney to withdraw from two cases is, independently, an exceptional condition that warrants appointment of a Special Master to determine the pervasiveness and effectiveness of this prosecution tactic in this and in other cases. This, too, is an area that cannot be efficiently assessed by the Court without the assistance of a Special Master.

Fourth, the unknown scope and time span of this practice of obtaining, whether inadvertently or intentionally, and then using protected communications by the USAO, and the many cases, both pending and

completed, that may have been compromised by this practice also qualifies as an exceptional condition, and demands the assistance of a Special Master to effectively and efficiently investigate.

Fifth, the government's response has been unhelpful to the Court. It has not answered the most piercing questions before the Court, such as how and why this happened and whether it has happened before. It has not responded to the defense evidence, which stands unrefuted before this Court.[3] It has not provided accurate information to the defense.[4]  Instead, it has challenged standing of the parties and sought to divest this Court of jurisdiction,[5] even resorting to accusations of defense forum shopping.[6] The refusal of the government to respond to the defense or to inform the Court is an exceptional condition that calls for appointment of a Special Master.

---

[3] August 9, 2016, tr. at p. 115 (the parties were to "advise the Court within seven days whether you intend to file anything else or need an additional hearing.").

[4] See, e.g., Ex. 443 (August 4, 2016, email forwarded by the USAO from the U.S. Marshal assuring that CCA did not, and could not, video record attorney-client visitation).

[5]   D.E. 110, First Gov't Response at pp. 8-14.

[6]   *United States v. Huff,* D. Kan. Case # 14-20067-CM, Status Conf. Transcript. August 22, 2016, p. 5.

**Scope of the Inquiry**

The first goal in the proposed Order is to determine which portions of the discovery in this case must be withheld because of privilege and confidentiality concerns, and which portions may be disseminated to the parties. We suggest that the Special Master simply excise the video recordings of the attorney rooms.[7] Reviewing each and every visit, "item by item" "recording by recording" as the government argues,[8] for content is burdensome and of little benefit to the Court or to the parties. A review of CCA visitation records will tell which attorneys and clients met during the relevant time period. This will allow discovery and other litigation to proceed in the affected cases. It is also a much more economical approach than that suggested by the government.

To fully assess the reach of the privilege violations, the Special Master must have access to the documents, ESI, and technology necessary to determine whether and when any of the recorded communications were

---

[7] The one caveat is this: there is both evidence from the government (Ex. 447, pp. 11-12) and independent evidence that may be available to the Special Master that CCA had both the ability to audio record these attorney client meetings and may have actually done so on occasion. CCA's denial is of little meaning, as are government claims that they are unaware of audio recordings. Should the Special Master develop sufficient information, the video recordings should be available for review at the Special Master's discretion.

[8] D.E. 110, Gov't Resp. at 12.

reviewed, and how and whether there is a practice or policy of the USAO obtaining, for example, recorded privileged telephone calls. Expanding the inquiry beyond the protected communications in this case is necessary to determine whether this was or is a routine and pervasive means of investigation and prosecution.

Free and ready access to information is critical to the Special Master's inquiry. This may require defense attorneys to disclose confidential or privileged attorney-client information. An attorney must be assured that making such disclosures will not waive either confidentiality or privilege. The Court should grant the Special Master authority to solicit this information with the protection of Kansas Rule of Professional Conduct 1.6. That information should remain confidential, and used only to direct further Special Master investigation, to prepare the Report, and for the Court to disclose as necessary, with notice to the affected parties.

Likewise, the government will have a strong interest in protection of confidential information relevant to ongoing investigations, pending charges, and in protecting certain witnesses. Accordingly, the similar protection should be afforded to the USAO.

In order for the Special Master to thoroughly investigate the facts he must have the cooperation of all parties and their agencies. If any party or

person refuses to cooperate with the requests of the Special Master, they must have the authority to impose sanctions or other enforcement measures against any person obstructing the inquiry.[9] The government has refused to explain, much less deny, its possession and use of the recordings, and whether this was a common investigative or prosecutorial tool. General allusions to inadvertent possession should be well investigated, first because it is belied by the evidence in the record, and second, because the government's handling of the protected material, both in attempting to gain advantage in litigation and by disseminating the protected material, was the wrong response, both legally and ethically, to inadvertent possession of protected material. For the Special Master to address any such issues, there must be some means of compelling information and cooperation, as well as enforcing the Order of the Court.

---

[9] Today, we are still unaware of how the privileged attorney-client phone calls came to be in the government's possession. Requests for material, such as the spreadsheets that CCA provided to help identify the video camera placement (August 9, 2016, transcript at p. 114), remain unanswered. And even as *Black* counsel were identifying and reviewing protected attorney-client phone calls recorded by CCA and disseminated by the government, CCA continued to maintain that attorney-client phone calls were not recorded. KCUR, *Discovery of Video Recordings at Leavenworth Detention Center Spurs Outrage*, August 12, 2016 ("We do not record inmate/attorney telephone conversations at Leavenworth or any other CCA facility," CA Jonathan Burns, CCA spokesman).

For these reasons and others previously presented to the Court, the defense asks the Court to grant the attached proposed Order Appointing Special Master.

                Respectfully submitted,

                s/Melody Brannon
                MELODY BRANNON #17612
                Federal Public Defender for the
                District of Kansas
                117 SW 6th Avenue, Suite 200
                Topeka, Kansas 66603-3840
                Phone: 785/232-9828
                Fax: 785/232-9886
                E-mail Address: melody_brannon@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Donald Christopher Oakley
    Assistant United States Attorney
    Office of the United States Attorney – Kansas City
    chris.oakley@usdoj.gov

    Erin S. Tomasic
    Assistant United States Attorney
    Office of the United States Attorney – Kansas City
    erin.tomasic@usdoj.gov

Debra L. Barnett
Criminal Chief
Assistant United States Attorney
Office of the United States Attorney – Wichita
debra.barnett@usdoj.gov

John Jenab
Jenab Law Firm, PA
john.jenab@gmail.com

David J. Guastello
The Guastello Law Firm, LLC
david@guastellolaw.com

Jason P. Hoffman
Hoffman & Hoffman
jphoffman@sbcglobal.net

Kathleen A. Ambrosio
Ambrosio & Ambrosio Chtd.
kaambrosio@yahoo.com

Michael M. Jackson
jacksonmm@aol.com

Cynthia M. Dodge
Cynthia M. Dodge, LLC
cindy@cdodgelaw.com

Shazzie Naseem
Berkowitz Oliver LLP - KCMO
snaseem@berkowitzoliver.com

            s/ Melody Brannon
            Melody Brannon