16CR20032-ord(Conference10.28.16).wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 16-20032 |
| Plaintiff | : | |
| | : | |
| v. | : | SPECIAL MASTER DAVID R. COHEN |
| | : | |
| LORENZO BLACK, *et al.*, | : | <u>DISCOVERY CONFERENCE ORDER</u> |
| Defendants | : | |

The Court appointed the undersigned to undertake various "Initial Duties," which principally include review of certain videotapes, audiotapes, and computers produced by Corrections Corporation of America – Leavenworth Detention Center ("CCA-Leavenworth"). *See Appointment Order* at 4-5 (docket no. 146). The Court also directed interested parties to attend a hearing on October 28, 2016 at 10:30 a.m., to discuss how to proceed.

The Special Master hereby requests the parties' assistance as follows. I have reviewed much of the record (although not all of it is available via ECF) and have some understanding of the issues listed below. I want to ensure I obtain as much additional relevant information as I can, as quickly as possible. Accordingly, at the upcoming hearing, the parties should please be prepared to answer the following questions, among others.

**Video Recordings**

- Explain the video-recording operation at CCA, including who operates it.

- Who downloaded / copied the video-recordings onto the six 3-terabyte Drives? Who later copied these drives (Secret Service?), using what tools? What was the chain of custody of the originals and copies? Who labeled them? Where are the "white" and "black" copies?

- Who created the "camera roster" showing which camera-recordings are on each Drive? How was this done (e.g., by actually viewing the videos, or based on prior knowledge of the video-recording system)?

- How do I obtain and use the video-viewer (DX8100?)? Who can "tutor" me on how this viewer works (perhaps informally, after the hearing)?

- Explain the extent to which there is meta-data included in the original video recordings, and the extent to which that meta-data remain in the recordings on the six Drives. Explain whether there is any internal index or folder structure or search function.

- What is CCA-Leavenworth's normal video-recording retention policy? Did actual retention change in connection with this case?

- How does the Offender Management System ("OMS") at CCA-Leavenworth work? Does it "marry" to the video records, so that it can be used as a cross-reference?

- Explain (and produce) CCA-Leavenworth's logs of visitors to the attorney-client meeting rooms. If redactions are necessary, please explain.

- Are there records of when/how/why CCA has produced video-recordings to the

government?[1] (This question is not limited in time, nor as to who might have those records).

**Audio Recordings**

- Explain the audio-recording operation at CCA, and inmate PIN numbers. Explain how the audio-recordings that were produced were gathered and copied and produced.

- What was the chain of custody of the originals and copies of audio-recordings?

- How do I review the audio-recordings? Is it possible (or, indeed, mandatory) to do this via the "cloud," as opposed to listening to files on hard-drives supplied by Securus? Who can "tutor" me on how this works (perhaps informally, after the hearing)?

- Explain the extent to which there is meta-data included in the original audio recordings, and the extent to which that meta-data remain in the copies of the recordings produced in this case. Explain whether there is any internal index or folder structure or search function.

- Explain how the audio-recording system was designed to and supposed to work regarding non-recording of telephone calls to and from attorneys. Provide a list of "blocked" numbers.

- What are CCA-Leavenworth's and Securus's normal audio-recording retention policies? Did actual retention change in connection with this case?

- Are there records of when/how/why Securus has produced audio-recordings to the government?[2] (This question is not limited in time, nor as to who might have those records).

- How was defense exhibit 449, which is a chart of data associated with the audio-recordings,

---

[1] If so, the Special Master directs these records be preserved, as well as the video-recordings that were produced.

[2] If so, the Special Master directs these records be preserved, as well as the audio-recordings that were produced.

created?

**Law Library Computers**

- Explain how the law library computers are used by inmates. What accessibility limits are placed upon the computers, what types of information can be saved and transmitted, and how are these things accomplished?

- How and where might attorney-client privileged information be present on these computers?

- Explain how the computer hard-drives were gathered and copied and produced. What procedure was used to image the hard-drives?

- What was the chain of custody of the originals and copies of the hard-drives?

- What software programs and operating systems were on the computers at the time they were imaged?

- How long were these computers in use? There was mention that the Law Library computers were upgraded or replaced, please explain.

**Persons with Relevant Information**

It appears the following persons, listed in no particular order, are a *few* of the individuals who may have information or knowledge relevant to the questions listed above (or who know others that do). I am not requiring these particular individuals to appear at the hearing, but I do ask that knowledgeable individuals connected with CCA, CCA-Leavenworth, the United States Marshals Service ("USMS"), the United States Secret Service ("USSS"), and the U.S. Attorney's Office ("OUSA"), appear at the hearing.

- USSS Agents Andrew Matushek and Paul York

- CCA-Leavenworth Chief of Security Roger Moore

- CCA-Leavenworth Sergeant Wayne Bigelow

- CCA local counsel Alyssa Brockert

- USMS Marshals Craig Beam and Michael Thibault

- Securus counsel Joshua Martin

- OUSA litigation support specialist Pauletta Boyd

- Attorney Michael Jackson (author of exhibit 449)

To the extent some of the individuals named above might not receive this Order via ECF, I ask the OUSA to please forward a copy to them.

**Other Information**

I ask the parties to please confer and provide me with: (1) copies of all of the exhibits introduced at the Court's hearings from August 9, 2016 onward (a partial list is at docket no. 130-1); and (2) transcripts from all of these hearings. I prefer documents on a thumb-drive, but will take hard copies.

**Status Quo**

The Court has contemplated the possibility of later directing me to pursue "additional investigative duties." *Appointment Order* at 7. Solely for the purpose of maintaining the status quo, the Special Master **ORDERS** that (1) the OUSA, and (2) CCA-Leavenworth, and (3) CCA, and (4) the USMS, shall *identify and preserve* all information and sources of information relevant to the

matters listed on pages 7-8 of the *Appointment Order* (docket no. 146).  This obligation includes preserving all emails (regardless of the device used to send or receive them) and other documents related to video- and audio-recording at CCA-Leavenworth or any other detention facility.

In addition, the Special Master specifically **ORDERS** the Office of the United States Attorney to immediately make a forensic image of the personal computers of Erin Tomasic, Kim Flannigan, and Pauletta Boyd, and also of any computer used to view the video-recordings produced in this case by individuals affiliated with the OUSA.

The Special Master is not ordering that these materials be produced at this time.

I look forward to meeting you on Friday, October 28, 2016.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**DATED**: October 25, 2016