# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
*Plaintiff,*

**v.**                          Case No. **16-20032-JAR**

**LORENZO BLACK, *et al.*,**
*Defendants.*

---

# FEDERAL PUBLIC DEFENDER'S REPLY TO THE UNITED STATES' CONSOLIDATED RESPONSE (D.E. 237)

---

The Special Master issued a report on March 16, 2017.[1] On March 30, the FPD filed its Proposed Findings of Fact and Supplemental Request to Expand the Special Master's Investigation.[2] The FPD did not object to the Special Master's proposed expansion of his investigation.[3]

The United States filed a consolidated response on April 17.[4] It requested, *inter alia*, that "the Court affirm the Special Master's Report."[5] The government did not make specific objections to all of the FPD's proposed

---

[1] Docket Entry (D.E. 214).

[2] D.E. 230.

[3] *Id.* Additionally, the FPD filed a Response (D.E. 220) to the Special Master's report that requested additional inquiry and notifications relating to 188 recorded inmate calls to attorneys. As the government does not object to this request (D.E. 237 at 2), the FPD renews its request that this information be obtained and provided forthwith.

[4] D.E. 237.

[5] *Id.* at 18.

findings of fact or request for supplemental investigation.[6]  Nor did the government oppose the Special Master's request for further investigation. So, the Court may adopt them as unopposed.

To the extent that the government's consolidated response could be construed as an objection to any of the FPD's proposed findings, its new assertions either lack support in the record or are outweighed by the objective evidence before the Court. The Court should adopt all of the FPD's proposed findings and grant the request to expand the Special Master's investigation.

## Arguments & Authorities

I.    **The FPD's proposed factual findings and request for further investigation, as well as the Special Master's areas of further investigation, may be adopted as unopposed.**

The Court could find that the government's response is insufficiently specific to be read as an objection and apply the wavier rule. That is certainly true of three of the defense proposed findings,[7] which the government's response did not address. The absence of a specific government objection to

_____

[6] Regarding the FPD's request for additional inquiry by the Special Master (D.E. 230 at 4, 23-27), the government response did state that the FPD "provide[d] no authority for the expansion and fail[ed] to identify a mechanism to pay the related costs." D.E. 237 at 3. This statement, without further elaboration, analysis, or argument, does not constitute an objection. Regardless, the Court has already settled these issues (D.E. 146 at n.2; D.E. 182), so the FPD does not address them again herein.

[7] D.E. 230 at 2-3 (proposed findings number 1, 6, and 7).

the defense proposals allows the Court to sustain the requests.[8]  The waiver

rule applies the commonsense principle that the failure to make a specific

objection to a request for relief constitutes a waiver of such an objection and

paves the way for the Court to grant the relief.

This Court may adopt at least three of the defense proposals as

uncontested. Moreover, the government's request to affirm the Special

Master's Report allows the Court to expand the investigation without

opposition.

## II.    The government's general disagreements either lack support in the record or are outweighed by other evidence.

Four defense proposed fact findings draw the government's general

dissent:

- When she subpoenaed 22 months of "all video footage" from CCA, SAUSA Erin Tomasic knew that this would include recordings of attorney-client meetings;[9]

- The USAO, by SAUSA Tomasic and Criminal Coordinator AUSA Kim Flannigan, relied on the existence of those privileged video recordings to attempt to disqualify a defense counsel from representing her client;[10]

---

[8] D.E. 146 at 10; D.Kan. L.R. 7.4(b); *see also United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("only an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act that led us to adopt a waiver rule in the first instance.")

[9]  D.E. 237 at 12.

[10] *Id*. at 13.

- CCA falsely denied that it video recorded attorney-client meetings;[11] and

- The USAO obtained recordings of attorney-client phone calls from CCA and failed to notify the affected attorneys or their clients that the USAO possessed these recordings.[12]

Each proposal is grounded in the record evidence.  A court's factual findings are given wide deference. The Tenth Circuit will only reverse a district court's factual findings if a party can show the findings were "clearly erroneous."[13] A factual finding is only clearly erroneous if it either: lacks support in the record; or if the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.[14]

In contrast, the government's alternative interpretation is contradicted by the evidence and should all be rejected, for the reasons that follow.

**A.    SAUSA Tomasic knew when she subpoenaed 22 months of "all video footage" CCA-Leavenworth that this would include video recordings of attorney-client meetings.**

The government's claim that it "never intended to request or receive CCA recorded attorney-client meetings"[15] when it issued a subpoena to CCA

---

[11] *Id.* at 4.

[12] *Id.* at 13.

[13] *Dowell by Dowell v. Bd. of Educ. of Oklahoma City Pub. Sch., Indep. Dist. No. 89, Oklahoma City, Okl.*, 8 F.3d 1501, 1509 (10th Cir. 1993).

[14] *Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 511 (10th Cir. 1985) (citations omitted).

[15] D.E. 237 at 11-12.

is contradicted by the evidence. And the government's account of what

SAUSA Tomasic knew and when she knew it varies widely and strains

credulity. It requires one to believe that SAUSA Tomasic:

- Learned from an informant in March 2016 that attorney-client meetings were video recorded;[16]

- Relied on that knowledge to plan and propose an undercover operation documented by the video recordings;[17]

- Forgot that attorney-client visitation rooms were video recorded before issuing a subpoena for CCA video recordings on April 12, 2016;

- Remembered that CCA recorded attorney-client visits at the status conference on July 21 when she represented that fact to the Court;

- Remained silent and took no effort to correct facts being represented by her office when on August 4 the USAO criminal chief sent an email (copied to SAUSA Tomasic and AUSA Flannigan) that attorney-client visitations were not recorded;[18]

- Reached a state of agnosticism as to whether attorney-client visits at CCA were video recorded ("the government is not certain") when drafting an email to the Court while defense counsel was viewing, at the USAO's direct invitation and at its office, recorded videos of her client meetings at CCA; and, finally,

- Admitted to the Court on September 7 that "the government had a good-faith basis to believe that the CCA video recordings

---

[16] Hrng. Tr. 18:01-15 (Sep. 7, 2016).

[17] *Id.* at 18:08-20:20.

[18] Def. Ex. 454 at 6:09-7:06 ("[I]nformation is being circulated amongst the bar that CCA is recording privileged meetings between defendants and attorneys. I was asked about this earlier today, and made contact with the U.S. Marshals, who contacted CCA's new warden, who provided the following information…There is no recording function associated with the camera [in the CCA attorney-client visitation room]…To be more clear, there is no way to record visual or audio with this camera…").

contained attorney-client meetings at the time the issue — the subpoena was issued."[19]

Taken together, the Court has overwhelming support in the record to sustain the defense proposed finding that SAUSA Tomasic knew that the government would receive recordings of attorney-client meetings when she issued the subpoena to CCA. No reviewing court, looking at all the evidence, would conclude that such a finding was in error.

**B.    *The USAO, by SAUSA Tomasic and Criminal Coordinator AUSA Kim Flannigan, relied on the existence of those privileged video recordings to attempt to disqualify a defense attorney from representing her client.***

The government's claim that it did not knowingly use the videos of these meetings in attempt to threaten a defense attorney with disqualification lacks evidentiary support. In fact, the opposite conclusion finds a wealth of support in the record. Defense attorney Jackie Rokusek, who came forward in open court and made herself available for cross-examination, recounted in detail her meeting with SAUSA Tomasic and AUSA Flannigan when this threat was made.

The government now asserts, for the first time, that SAUSA Tomasic and AUSA Flannigan "differ strongly regarding defense counsel's recollection and interpretation."[20] The government goes on to argue that the FPD

---

[19] Hrng. Tr. 13:11-14 (Sep. 7, 2016).
[20] D.E. 237 at 13.

"chooses to adopt only the recollection and interpretation of defense counsel, and discounts the prosecutor's words as defying credibility."[21] Yet, until this latest pleading, the prosecutors have never before "provided their account." And they certainly have not done so in the way Ms. Rokusek did: by stating it in open court and welcoming cross-examination. If the prosecutors have a differing account, they should have stated it openly in court, subject to cross-examination, just as Ms. Rokusek did. Otherwise, the Court should give it no evidentiary weight.

That is what the Tenth Circuit requires. As it explained in *Shillinger*, a district court may not merely rely upon unsworn statements of prosecutors in resolving whether there has been an intrusion into an attorney-client relationship by the government.[22] The *Shillinger* court criticized the lower court for using the same procedure that the government urges here: "[i]t is also evident from the record that the prosecutor's [unsworn] statements are the only evidence that the Wyoming Supreme Court relied upon in determining the extent of the prosecution's intrusion."[23]

Procedural deficiencies aside, the evidence contradicts the government's account. Ms. Rokusek testified that, during her August 2

---

[21] *Id.* at 15.
[22] 70 F.3d 1132 (10th Cir. 1995).
[23] *Id.* at 1137.

meeting with SAUSA Tomasic and AUSA Flannigan, they told her that they had assigned a law-enforcement officer to review her "attorney-client meetings from CCA."[24] The government now claims that this did not occur. But that claim is belied by email correspondence from the following day, in which Ms. Rokusek wrote to SAUSA Tomasic and AUSA Flannigan: "You mentioned that you were reviewing video of my visits with [my client] at CCA. I would like an opportunity to review the same video footage… ."[25] If the government's version of events were correct, this email should have prompted SAUSA Tomasic and AUSA Flannigan to respond with a clarification or vehement denial of such an accusation.

It did not. Instead, SAUSA Tomasic responded that the video was available for review.[26] And AUSA Flannigan responded separately to urge Ms. Rokusek to review the video soon.[27] In other words, neither SAUSA Tomasic, nor AUSA Flannigan denied that the government was in the process of reviewing recorded attorney-client meetings, or that they had said as much during their meeting with Ms. Rokusek. "It is well established that, as a general rule, when an accusatory statement is made in [a party's] presence and hearing, and he understands it and has an opportunity to deny

---

[24] Hrng. Tr. 35:03-08 (Aug. 9, 2016).
[25] Def. Ex. 441.
[26] *Id.*
[27] *Id.*

it, the statement and his failure to deny it are admissible against him."[28]
Here, the government's newfound account of the August 2 meeting is flatly
contradicted by its contemporary silence in the face of Ms. Rokusek's
accusation.

Ms. Rokusek's testimony, corroborated by documentary evidence,
confirms that SAUSA Tomasic and AUSA Flannigan relied on the existence
of these recordings to attempt to disqualify Ms. Rokusek. No reviewing Court
could conclude, based on the record as a whole, that such a finding is a
mistake.

## C.   *CCA falsely denied that video of attorney-client meetings at CCA was recorded.*

The government does not lodge a full-throated objection to this
proposed finding. Nor could it because it is a fact beyond dispute that CCA-
Leavenworth falsely denied that it was video-recording attorney-client
meetings. To clarify, the FPD does not argue, as alleged by the government,
that "CCA, the Marshals Service, or the USAO communicated intentional
false information to the public defender."[29] The FPD is confident that several
persons at the USAO, including AUSA Barnett, and U.S. Marshals Service,
including DUSMs Beam and Oberly, passed along information they received

---

[28] *United States v. Lilley*, 581 F.2d 182, 187 (8th Cir. 1978).
[29] D.E. 237 at 4.

in good faith without knowing it was false. Moreover, the FPD acknowledges that there was immediate action by leadership within the USAO when the FPD alerted them to CCA's recording. Yet, it still doesn't change the fact that false information was generated when the Warden denied the video recordings.

First, there is no evidence that the Warden was "unaware." Second, SAUSA Tomasic and AUSA Flannigan knew this information to be false when it was circulated and there is no evidence they took any steps to correct it. Here, the defense does not ask the Court to find that the Warden *intentionally* provided false information, only that it was, in fact, false. No reviewing Court would deem such a finding a mistake after a full review of the record.

**D.**  ***The USAO obtained recorded attorney-client phone calls from CCA and did not notify affected attorneys or their clients that the USAO was in possession of these privileged calls.***

The government's claim that it notified attorneys when it came across recorded attorney-client phone calls falls flat when viewed against the evidence. The FPD's proposal is sourced in the record evidence.[30]

And the Special Master's investigation confirms this fact. The investigation to date revealed that 188 calls between an attorney and a client

---

[30] D.E. 230 at 14-17.

were "selected for review by a law enforcement officer or government attorney,"[31] a finding unopposed by the government. Yet there is no evidence in the record, nor does the government contend, that it notified the parties to all 188 calls about the intrusion. Indeed, only one instance of notification has ever been identified by the government. No reviewing court would conclude, after reviewing the record as a whole, that such a finding was a mistake.

## Conclusion

There are more identifiable discrepancies in the government's response that could be briefed to the Court.[32] But there is already sufficient evidence to support the proposed findings of fact and for the Court to expand the Special Master's investigation.

The Special Master has yet to finish the work this Court set out for him. Additional investigation is necessary for the Special Master to make final, rather than tentative, factual findings, and so the parties can seek relief from the Court with a full understanding of the facts.

---

[31] D.E. 214 at 22-23.

[32] For example, the government argues that CCA-Leavenworth, Securus, and the USAO are "legally separate entities." D.E. 237 at 8. The FPD does not believe the Court has to resolve whether CoreCivic (CCA) was or is an "agent" of the government for purposes of the present findings of fact or expansion of the Special Master's investigation. However, to the extent the Court deems it necessary to resolve the agency question, the FPD welcomes the opportunity to fully brief the issue to the Court.

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Melody_Brannon@fd.org

s/ Kirk C. Redmond
KIRK C. REDMOND #18914
First Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Kirk_Redmond@fd.org

s/ Branden A. Bell
BRANDEN A. BELL #22618
Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Branden_Bell@fd.org

s/ Rich Federico
RICH FEDERICO, #22111
Staff Attorney
for the District of Kanas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Rich_Federico@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2017, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

David R. Cohen
David R. Cohen Co., LPA
Special Master
david@specialmaster.law

Donald Christopher Oakley
Assistant United States Attorney
Office of the United States Attorney – Kansas City
chris.oakley@usdoj.gov

Debra L. Barnett
Criminal Chief
Assistant United States Attorney
Office of the United States Attorney – Wichita
debra.barnett@usdoj.gov

Duston J. Slinkard
Assistant United States Attorney
Office of the United States Attorney- Topeka
duston.slinkard@usdoj.gov

John Jenab
Jenab Law Firm, PA
john.jenab@gmail.com

David J. Guastello
The Guastello Law Firm, LLC
david@guastellolaw.com

Jason P. Hoffman
Hoffman & Hoffman
jphoffman@sbcglobal.net

Kathleen A. Ambrosio
Ambrosio & Ambrosio Chtd.
kaambrosio@yahoo.com

Michael M. Jackson
jacksonmm@aol.com

Cynthia M. Dodge
Cynthia M. Dodge, LLC
cindy@cdodgelaw.com

Shazzie Naseem
Berkowitz Oliver LLP - KCMO
snaseem@berkowitzoliver.com

Erin C. Thompson
Foland, Wickens, Eisfelder, Roper, Hofer, PC
ethompson@fwpclaw.com

Jacquelyn E. Rokusek
Rokusek Law, LLC
rokuseklawoffice@yahoo.com

Jonathan L. Laurans
jlaurans@msn.com

Melanie S. Morgan
Morgan Pilate LLC
mmorgan@morganpilate.com


                                       <u>s/ Melody Brannon</u>
                                        Melody Brannon