IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
    *Plaintiff,*

    **v.**                                   Case No. **16-20032-JAR**

**LORENZO BLACK, *et al.*,**
    *Defendants.*

---

**FEDERAL PUBLIC DEFENDER'S OBJECTION TO THE SPECIAL MASTER'S FIRST STATUS REPORT REGARDING PHASE III INVESTIGATION (D.E. 298)**

---

Pursuant to the Court's Appointment Order,[1] the Federal Public Defender respectfully submits one objection to the Special Master's First Status Report Regarding Phase III Investigation.[2] The FPD objects to the following statement in the Report: "the Phase III investigation to date suggests there is only *one* instance where the OUSA even made a *request* for video-recordings of meetings at CCA between inmates and their attorneys, and the OUSA did not actually view any such meeting."[3]

We object to this preliminary finding for three reasons. First, this statement in the Report prematurely makes a credibility determination of

---

[1] D.E. 146 at 10; *see also* Fed. R. Civ. P. 52(f)(2).

[2] D.E. 298.

[3] *Id.* at 9 (emphasis in original).

1

conflicting witness testimony. Second, the government's refusal to cooperate, as described by the Special Master's Report, potentially conceals direct evidence of this very sort of conduct. Third, the Report does not contemplate the adverse inference that should be drawn from the government's destruction of evidence, as documented in the Court's Phase III Order.[4]

> **1. The Special Master made a premature credibility determination concerning conflicting witness testimony that is unwarranted by the evidence or the totality of the circumstances.**

In directing the Phase III investigation, the Court recognized:

[T]hat the government's version of the conversations between (Jackie) Rokusek, (SAUSA Erin) Tomasic, and (AUSA Kim) Flannigan is quite inconsistent with Rokusek's version. … If Rokusek's version is correct, then it is clear that the government counsel have made misrepresentations to the Court, have acted with a lack of transparency and candor, and have, at least through their investigative agent, viewed a recording of Rokusek and Dertinger."[5]

---

[4] D.E. 253 at 40.

[5] D.E. 253 at 36, n. 51 (the Court also noted: "Consistent with its avoidance and lack of transparency on this issue, the Court did not learn the government's version until Tomasic's September 6 brief, and her explanatory statements during the September 7 hearing. In contrast, Rokusek's version was offered by sworn affidavit as well as testimony.").

2

The Court further found that "[t]hese highly disputed versions of the critical events warrant a Phase III investigation"[6] and directed "the Special Master to investigate the credibility of these two versions of the events, particularly in the light of other credible evidence."[7] In other words, it is the duty of the Special Master to investigate, gather evidence, and ultimately resolve the disputed version of critical events. This includes evaluating witness credibility.[8]

There is no way for the Special Master to resolve this highly disputed version of events in the government's favor at this point. The government has been neither reliable nor credible. To the extent that the Special Master rests his preliminary conclusion upon the government's uncorroborated assurances, we must object. The record will not support this reliance. This is

---

[6] *Id.*

[7] *Id.* at 37.

[8] *Compare Shillinger v. Haworth*, 70 F.3d 1132, 1137 (10th Cir. 1995) ("We also believe that the 'factfinding procedure employed by the State court was not adequate to afford a full and fair hearing.' . . . In this regard, we again emphasize that no sworn testimony was ever taken, and most of what was relied upon by the Wyoming Supreme Court was hearsay. The procedures afforded by the Wyoming courts completely denied 'any opportunity to challenge or impeach' the prosecutor's assertions or those he attributed to the deputy. See *Ford v. Wainwright*, 477 U.S. 399, 415, 106 S.Ct. 2595, 2604, 91 L.Ed.2d 335 (1986) ( '[C]ross-examination ... is beyond any doubt the greatest legal engine ever invented for the discovery of truth.' ) (quoting 5 John Henry Wigmore, *Evidence* § 1367 (James H. Chadbourn rev. 1974)).")

especially so because, as noted in the Report, "at this juncture, neither the OUSA nor USSS is cooperating in the Special Master's investigation."[9]

And, if a credibility determination were to be made based upon the evidence to date, it would lean heavily in favor of Ms. Rokusek's sworn testimony and against the government. As the Court stated, "the government has offered a number of inconsistent, inaccurate, and misleading statements about their knowledge of the existence of the video recordings and whether they viewed or otherwise used any of the video recordings."[10]

2. **The government's refusal to provide relevant information to the Special Master, in defiance of the Court's express written order, belies any claim that there was only one request or attempt to access attorney-client communications.**

As detailed in the Special Master's Report and the defense motion for the government to show cause why it should not be held in contempt,[11] the government continues to hide relevant information. Had the government chosen a course of transparency and cooperation, perhaps the Special Master's presumption of singular misconduct would be better founded. But the continued obfuscation implies hidden evidence, and that evidence may

---

[9] D.E. 298 at 8.

[10] D.E. 253 at 30.

[11] D.E. 301.

4

well include other government requests for attorney-client communications or other instances of government access and use of attorney-client communications. Without that unfiltered information, the Special Master cannot conclude, even preliminarily, that there has only been one request for attorney-client videos. The absence of evidence, in these circumstances, is not evidence of absence.

### 3. Spoliation of evidence – the Report failed to consider the USAO's "wiping" of the standalone computer used to play the CCA recordings.

In directing the Phase III investigation, the Court detailed how, despite a court order in place to preserve all hard drives, the USAO destroyed "critical evidence" when it wiped clean the hard drive of the standalone computer Boyd set up to play the CCA videos.[12] When the government "wiped clean" the hard drive that the Court had ordered preserved, it "precluded the Special Master from examining and analyzing the one computer that could have provided meta data and information revelatory of when video recordings were played, perhaps by whom, and perhaps what video recordings were played."[13]

---

[12] D.E. 253 at 38-40.

[13] *Id.*

This government action, whether intentional or inadvertent, prevented the Special Master from conducting a forensic analysis of that computer that may have provided answers as to what videos were played, when the videos were played, and who played the videos. When a party is responsible for knowingly destroying evidence, the law allows the Court to infer that evidence would have been favorable to the other party.[14] The Special Master should not reach a conclusion about the viewing of videos without fully considering any adverse inferences that must be drawn due to the spoliation of evidence.[15] The FPD objects to the Report seemingly doing so.

### 4. Conclusion

The FPD files this objection to ensure our position is preserved. We will be prepared to address this objection more fully, as needed, at the hearing set for November 28, 2017.[16]

---

[14] *103 Investors I., L.P., v. Square D. Company,* 988-89 (10th Cir. 2006).

[15] *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912 (10th Cir. 1998).

[16] D.E. 300.

Respectfully Submitted,

s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785.232.9828
Fax: 785.232.9886
Melody_Brannon@fd.org

s/ Branden A. Bell
BRANDEN A. BELL #22618
Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Branden_Bell@fd.org

s/ Kirk C. Redmond
KIRK C. REDMOND #18914
First Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Kirk_Redmond@fd.org

s/ Rich Federico
RICH FEDERICO #22111
Staff Attorney
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Rich_Federico@fd.org

**CERTIFICATE OF SERVICE**

 I hereby certify that on November 3, 2017, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

        s/ Melody Brannon
        Melody Brannon