## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| LORENZO BLACK,<br>KARL CARTER,<br>ANTHON AIONO,<br>ALICIA TACKETT,<br>CATHERINE ROWLETTE, and<br>DAVID BISHOP,<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) |

### RESPONSE OF SPECIAL MASTER TO
### GOVERNMENT'S MOTION (DOC. 366) TO TERMINATE PHASE III
### OF THE SPECIAL MASTER'S INVESTIGATION

The Special Master hereby responds to the government's motion to terminate Phase III of the Special Master's investigation ("Motion to Terminate"). Because the Special Master serves at the Court's pleasure, the Special Master takes no position on whether the Court should continue in full, limit, or discontinue the Phase III investigation. This response simply provides certain additional observations for the Court's consideration.

In addition to the Motion to Terminate, the government also filed a corrected motion (Doc. 341) to quash subpoenas of the Special Master and vacate the Special Master's Order of production ("Motion to Quash"). The Motion to Quash addresses whether the Court should enforce specific actions the Special Master has undertaken in pursuit of the Phase III investigation, while the motion

to Terminate addresses the larger, existential question of whether the Special Master's Phase III investigation should continue. The Special Master did respond to the Motion to Quash. The government recites many of the same facts and arguments in its Motion to Quash and Motion to Terminate, so the Special Master's response to the Motion to Quash is incorporated here by reference.

In sum, the memorandum below sets out some additional relevant facts and observations. It does not address the points of law offered by the government in its Motion to Terminate.

## MEMORANDUM

A.  UNDISPUTED PROCEDURAL FACTS RELEVANT TO THE MOTION

1.  An indictment in this case, which is designated as a complex criminal case, was returned on May 4, 2016. (Doc. 64)

2.  Initial conferences and hearings revealed issues of significant concern, involving recorded inmate telephone calls and video recordings made in attorney-client conference rooms at a detention facility operated by a private contractor, Corrections Corporation of America, near Leavenworth, Kansas ("CCA").

3.  The hearings also produced inquiries into alleged prosecutorial negligence or misconduct by the United States Attorney's Office for the District of Kansas ("USAO").

4.  Defendants and the Federal Public Defender (as movant intervenor) ("FPD") raised questions arising to a level of constitutional significance, particularly allegations of Fifth and Sixth Amendment violations.

5. At a hearing on August 9, 2016, "The Federal Public Defender ("FPD") requested a Special Master and [the] Government agreed one should be appointed." (Doc. 101)

6. At the next hearing, August 16, 2016, there was no agreement as to the scope of such an appointment, but there also was no motion to reconsider the appointment of a special master, and a USAO attorney presented the names of possible candidates acceptable to the USAO. (Doc. 118, Tr. at 71-72)

7. On September 6, 2017, a few hours before the evidentiary hearing scheduled on these matters, the government filed a memorandum "in support of proposed order to appoint a special master," which supported only the scope it had itself suggested. (Doc. 133)

8. The government's September 6 memorandum specifically opposed "the FPD's assertion that the unusual circumstances here give rise to exceptional conditions warranting a review by the Special Master of the policies and practices of the [USAO]." (Doc 133 at 2)

9. On October 11, 2016, the Court appointed the undersigned as Special Master, pursuant to Fed. R. Civ. P. 53 and the inherent equitable authority of the Court. The parties agreed the Court "should follow the directives of [Civil Rule 53]" in this case. (Doc. 146 at 2)

10. The Court directed the Special Master to conduct his investigation in one or more of three phases. Phase I was a feasibility study (*id.* at 5), after which the Court would determine whether to proceed to Phase II, to consist of discovery duties agreed upon by the FPD and the Government. (*Id.*)

11. The Court specified it might later expand the investigation into the government's involvement into various matters raised in the investigation, including relevant practices and procedures of the USAO. ("Phase III"). (*Id.* at 7-8)

12. The Appointment Order recited the Special Master's authority under Civil Rule 53 to file orders, findings, and recommendations, subject to the Court's *de novo* review and final decision on such filings. (*Id.* at 10-11)

13. On October 27, 2016, the government moved to reconsider the appointment. (Doc. 163)

14. On November 16, 2016, the Court directed the Special Master to proceed with the Phase II scope of work defined in the Appointment Order. (Doc 179).

15. On November 29, 2016, the Court denied the government's Motion for Reconsideration (Doc 163), finding that the Special Master's duties were properly assigned, and the Special Master's compensation and costs were properly imposed upon the government. (Doc. 182)  The government did not ask for any type of additional review (e.g., appeal or mandamus) of the Court's order of appointment.

16. On May 17, 2017, the Court ordered the Phase III investigation to commence, with the Special Master's compensation and costs now to be paid by funds of the Court appropriated for that purpose, instead of by the government. (Doc. 253 at 48)

17. The Court directed the Special Master to focus Phase III not only on the procedural changes needed to ensure privacy for privileged communications at CCA, but also on the USAO's conduct, including: (a) knowledge and intent regarding recording of inmate calls and privileged communications at CCA; (b) how the USAO procured such audio and video files; and (c) whether USAO personnel listened to, watched, or used such recordings. The Court explicitly directed that all relevant parties must cooperate fully with the Special Master. (Doc. 253)

18. The government did not ask for any type of review (e.g., reconsideration, appeal, or mandamus) of the Court's order directing the Special Master to pursue the Phase III investigation. For several months, the USAO worked cooperatively with the Special Master to develop a protocol for electronic discovery of documents responsive to the Special Master's investigative requests.

19. On September 12, 2017, the Special Master received a 24-page letter from Special Attorney Steven Clymer, wherein he "respectfully decline[d] to provide most of the information and documents sought" by the Special Master as a part of the Phase III investigation. (Doc. 298, Exh. I at 2). This communication was the first suggestion that the government was not going to cooperate fully by providing all requested information to the Special Master.

20. The Special Master filed a Phase III report on October 20, 2017 (Doc. 298), and the Court set a hearing for November 28 to "discuss the Special Master's findings concerning the government's failure to comply with the Phase

III investigation" and "any other issues the parties may want to address related to the Phase III investigation." (Doc. 300)

21. On November 3, Mr. Clymer entered his appearance as Special Attorney for the United States Department of Justice ("DOJ"). The hearing was continued until January 18, 2018, at his request. (Doc. 308)

22. On December 19, 2017, Mr. Clymer filed the government's Motion to Quash, seeking to: (a) vacate the Special Master's Order to produce documents and other items (hereinafter "the materials") on January 2 for review of all parties (Doc. 317); (b) quash a subpoena *duces tecum* for production of those same materials at the January 18 hearing; and (c) quash the Special Master's subpoenas *ad testificandum*, which had been issued and served on several USAO employees and a former employee of the USAO in order to obtain testimony at the January 18 hearing.

23. On December 21, 2017, the Court ordered stays of compliance with pre-hearing submission of materials identified in the Special Master's Order of Production and in his subpoena *duces tecum.* (Doc. 345)

B. ADDITIONAL POINTS AND OBSERVATIONS

- In the Introduction section of its Motion to Terminate, the government recites the central thrust of its position: "[T]here is no *evidence* suggesting that the constitutional rights of any of the defendants in this case were violated, merely yet unproven allegations by one of the remaining defendants. Under these circumstances, investigation into the internal

operations and decision-making of the United States Attorney's Office for the District of Kansas ("USAO") is improper." Motion at 3 (emphasis in original). The circularity of this argument is apparent. The government has refused to produce virtually all of the evidence requested by the Special Master (despite earlier agreements to do so). To now assert the alleged *lack* of evidence is a basis for terminating the Investigation is to substitute the cause for the consequence.

- The government asserts that Phases I and II of the investigation "did not reveal any violations of the Sixth Amendment rights of the defendants named in this case. Nor did they produce any evidence of ongoing or widespread violations of the Sixth Amendment rights of other CCA-Leavenworth inmates." *Id.* at 4. To support this assertion, the government points to the Special Master's "*tentative"* conclusion that the USAO did not regularly use video recordings to obtain attorney-client communications. *Special Master Report* at 26 (Doc. 298). In the same *Report,* however, the Special Master stated that "the extent to which the [USAO] or law enforcement officers obtained recordings of telephone calls made by inmates to attorneys from Securus telephones – and more particularly, the extent to which the government was not entitled to obtain those recordings" – was an open question. Ultimately, these questions remain unanswered (including the question tentatively answered) *because* the government has chosen not to produce requested information. To repeat, the government's assertion that the Investigation should be terminated

7

because its early Phases did not produce "evidence of ongoing or widespread violations" of prisoner's rights is to substitute cause for consequence.[1]

- The government quotes an email from the undersigned to Mr. Clymer, stating "I believe many of the points in your letters to me are well-taken." *Id.* at 9. To be clear, I stated to Mr. Clymer that, in the subpoena *duces tecum* that I have since issued, "I will be dramatically narrowing the materials I am requesting [compared to the earlier Requests for Production sent to United States Attorney Thomas Beall], as I believe many of the points in your letters to me are well-taken," and "Once you see what my limited/tailored requests are, we can discuss whether you still believe they are overbroad."[2] That I agreed to and did narrow the scope of documents I requested from the USAO was *not* a concurrence that the Court's order directing me to pursue the Phase III Investigation was infirm.

- Mr. Clymer offers the following fact pattern: (1) he wrote the undersigned a letter asserting that "the record remains devoid of evidence that any

---

[1] Furthermore, of course, the Court has already made specific findings regarding the evidence obtained to date, reciting it as the basis for authorizing the Phase III investigation. This evidence includes: (1) the only computer in the USAO's office that was "wiped clean" is the one that would have revealed whether the USAO viewed attorney-client meetings; (2) a USAO attorney made an after-hours entry into chambers where impounded materials in this case were kept, after obtaining authority from her supervisors to do so; (3) recorded conversations between inmates and their attorneys were disseminated by USAO not only to the affected attorneys but to numerous other attorneys; and (4) the reasons and circumstances recited by USAO for these and other activities were repeatedly inconsistent.

[2] This very procedure is contemplated in the United States Attorney's Manual at §1-6.220: "Negotiation with the party making the demand is, in many cases, appropriate. Often the issues can be narrowed so that authorization is possible or the demand may be withdrawn once the government's relevant concerns and supporting arguments are raised and discussed."

defendant named in the *Black* case suffered a violation of his or her Sixth Amendment right to counsel;" (2) he then asked that, "If you believe th[is] . . . assertion[ is] inaccurate or incomplete, or there is material information that I have not but should consider, please let me know;" and (3) "[t]he special master has not [thereafter] identified any inaccuracies in these statements." *Id.* at 16.  But the reasons the Special Master did not respond to Mr. Clymer on this point are that: (a) the Phase III Investigation is almost entirely inchoate (again, the "lack of evidence" is explained equally by non-production from the USAO), and (b) answering the question could actually compromise the scope and direction and efficacy of the Investigation, itself.  Furthermore, as Reported by the Special Master, there is substantial evidence that CCA sometimes recorded inmate-attorney phone calls even after those attorneys directed CCA not to.  (Doc. 214 at 21-24)  This undermines the government's assertion that "there would *not necessarily* have been a violation of the attorney-client privilege or the Sixth Amendment right to counsel." *Id.* at 17.

- The government concedes the Court has (1) a "limited power to investigate [and] . . . limited authority to order the executive branch to take certain action," (2) "inherent supervisory authority . . . to investigate misconduct," and (3) "authority to sanction individual attorneys who commit misconduct" and "refer instances of misconduct to the DOJ's Office of Inspector General (OIG) or Office of Professional Responsibility (OPR)." *Id.* at 11, 14.  The government then adds, "But courts do not have authority

to order changes in the internal policies or procedures of a United States Attorney's Office." *Id.* at 11.  Even assuming the latter statement is correct, it does not speak to the propriety of the Phase III investigation.  In other words, the Phase III investigation may reveal reasons for the OUSA to change its *own* policies and procedures, or for the Court to sanction an attorney for misconduct, or for the Court to conclude a defendant's rights have been infringed.  The Phase III investigation ordered by the Court is *not* directed at changing prosecutorial decision-making, in contrast to all of the cases cited by the government.

        Respectfully submitted,

        */s/ David R. Cohen*
        David R. Cohen
        Special Master
        24400 Chagrin Blvd. #300
        Cleveland, OH 44122
        216.831.0001
        david@specialmaster.law

<u>Certificate of Service</u>

I hereby certify that on December 28, 2017, I electronically filed the foregoing response using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *David R. Cohen*