# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Case No. 16-CR-20032-JAR** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Government's Consolidated Reply to** |
| | ) | **the Responses of the Special Master** |
| | ) | **and the Federal Public Defender to the** |
| **LORENZO BLACK,** | ) | **Government's Motions to Quash** |
| **KARL CARTER,** | ) | **Subpoenas; Vacate the Special** |
| **ANTHON AIONO,** | ) | **Master's Production Order; and** |
| **ALICIA TACKETT,** | ) | **Terminate Phase III of the Special** |
| **CATHERINE ROWLETTE, and** | ) | **Master's Investigation; Memorandum** |
| **DAVID BISHOP,** | ) | **of Points and Authorities** |
| | ) | |
| **Defendants.** | ) | |

The United States of America, by and through its counsel of record, Assistant United States Attorney Steven Clymer, appointed as Special Attorney pursuant to 28 U.S.C. § 515 to represent the United States in connection with Phase III of the special master Investigation, hereby replies to the following responses filed by the special master and the Federal Public Defender:

1.  The Special Master's Response to the Government's Motion to Terminate Phase III of the Special Master's Investigation.  The government's motion is Docket #336; the special master's response is Docket #351.

2.  The Special Master's Response to the Government's Corrected Motion to Quash the Special Master's Subpoenas and to Vacate the Special Master's Production Order.  The government's motion is Docket #341; the special master's response is Docket #350.

3.  The Federal Public Defender's Response to the Government's Motion to Terminate Phase III of the Special Master's Investigation.  The government's motion is Docket #336; the Federal Public Defender's response is Docket #358.

4.  The Federal Public Defender's Response to the Government's Corrected Motion to Quash the Federal Public Defender's Subpoenas.  The government's motion is Docket #340; the Federal Public Defender's response is Docket #357.

The government's consolidated reply is set out in the attached memorandum of points and authorities.

.       .                          Respectfully submitted,

Steven D. Clymer
Special Attorney for the United States
NDNY Bar Roll No. 509281

## TABLE OF CONTENTS

I.    **Introduction**....................................................................................................1

II.   **Argument** ......................................................................................................3

    A.  **The Special Master's Phase III Investigation is Constitutionally Impermissible** ............................................................................................3

        1.  The Special Master's Response Does Not Identify a Legal Justification for the Phase III Investigation....................................................................3

        2.  The Federal Public Defender's Response Does Not Provide a Legal Justification for the Phase III Investigation ...........................................5

            a.  The Government Repeatedly Opposed an Investigation into Its Operations and Decision-Making ....................................................5

            b.  Constitutional Limits on Judicial Authority to Investigate the Executive Branch Cannot Be Waived................................................................10

        3.  The Federal Public Defender's Claims of Sixth Amendment Violations are Irrelevant and Demonstrably False. ......................................................12

        4.  The Special Master's Order of Production Must be Vacated and His Subpoenas Must be Quashed .................................................................14

    B.  **The Federal Public Defender Lacks Standing to Participate in This Case** ..........15

        1.  The Court's Decision to Permit the Federal Public Defender to Act as an "Intervener" in this Case Does Not Confer Article III Standing ..........................15

        2.  The Federal Public Defender's Waiver, Estoppel, and Invited Error Arguments are Legally and Factually Meritless ....................................17

            a.  The Court is Obligated to Consider Article III Standing Without Regard to the Federal Public Defender's Waiver Claims................................17

            b.  The Government Properly Preserved and Did Not Abandon a Challenge to the Federal Public Defender's Standing and This Court Has Never Found that the Federal Public Defender Has Standing........18

        3.  The FPD's Frivolous Rule 41(g) Motion Does Not Confer Standing in this Criminal Case..............................................................................21

i

a.   Legal and Factual Background ........................................................21

b.   Discussion ..............................................................................24

4.   The FPD "Constitutional Avoidance" Argument is Meritless .............................25

**C.  The Special Master's and Federal Public Defender's Responses to the Government's Rule 17-Based Objections to Their Subpoenas are Meritless** ......26

1.   The Special Master and FPD Subpoenas Are Investigatory, Which Rule 17 Prohibits ..............................................................................26

2.   The Special Master and FPD Subpoenas Seek Only Irrelevant Information.........29

**III.   Conclusion** .............................................................................29

## MEMORANDUM OF POINTS AND AUTHORITIES

## I

### Introduction

The government's motions – to terminate the Phase III investigation, quash the subpoenas issued by the Federal Public Defender ["FPD"] and special master, and vacate the special master's production order – present two threshold questions: (a) whether the court-appointed special master's investigation into the internal operations and decision-making of the United States Attorney's Office ["USAO"] is beyond the scope of a federal district court's Article III authority; and (b) whether the FPD has Article III standing in this criminal case.

The memoranda supporting the government's motions demonstrate that the Phase III investigation is an impermissible intrusion into the affairs of a co-equal branch of government and that the FPD lacks standing. As explained below, nothing in the responses filed by the special master or the FPD shows otherwise. For these reasons alone, this Court must quash the challenged subpoenas, vacate the special master's production order, and terminate the Phase III investigation and do so before the scheduled January 18, 2018 hearing. It would be constitutional error for the Court to empower the special master or the FPD to compel witnesses – some of whom have to travel from other states and cities – to appear at the hearing or produce documents. Timely judicial intervention is essential because both the special master and FPD have issued impermissible subpoenas to numerous members of the USAO management team and staff, and the resulting obligation to appear on February 18, 2018, would be unduly burdensome and inappropriate in light of the respect due to a coordinate branch of government.[1]

---

[1] The Federal Public Defender has issued subpoenas requiring appearance by and testimony from 16 witnesses, including 11 present USAO employees: United States Attorney Thomas Beall, First Assistant United States Attorney Emily Metzger, Criminal Chief and AUSA Debra Barnett;

These two threshold issues are dispositive of all pending matters in this case other than the motions filed by defendants Karl Carter and David Bishop. Thus, the Court need not resolve competing assertions concerning whether there is evidence of a Sixth Amendment right-to-counsel violation as to any CCA-Leavenworth inmate (other than Carter). Nor must it decide whether the special master's production order and the subpoenas that the special master and the FPD issued are unreasonable, oppressive, and demand irrelevant, non-specific, and inadmissible testimony, documents, and information. If the Court nonetheless chooses to address these other issues, it should find that the FPD's hyperbolic allegations of constitutional violations are unproven and that neither Fed. R. Crim. P. 17 nor any other provision of federal law permits the special master or the FPD to demand documents and witness testimony in order to investigate the operations and decisions of the USAO. The special master's and FPD's responses do not provide a valid basis for their demands for testimony and documents from government officials – much of it work product or otherwise privileged or otherwise protected – or from present and former CCA-Leavenworth employees.

Further, the responses of the special master and the FPD do not explain why their unprecedented involvement in this criminal case is necessary. As defendants Carter and Bishop have demonstrated, and indeed, as other criminal defendants in this District and elsewhere routinely demonstrate, any federally prosecuted offender who believes that his rights have been

---

Criminal Coordinator and AUSA Scott Rask; AUSAs Kim Flannigan, Tris Hunt, Christopher Oakley, Lanny Welch, David Zabel; Litigation Support Specialist Pauletta Boyd; and Systems Manager David Steeby. Some of these employees are stationed in cities other than Kansas City. In addition, three other FPD-subpoenaed witnesses, Deborah Kinney, Leslie West, and Erin Tomasic, reside in states other than Kansas. The special master has issued subpoenas requiring appearance by and testimony from USAO employees Beall, Metzger, Barnett, Flannigan, Boyd, Steeby, and Tomasic.

violated can effectively litigate his claims in his own case without participation by a court-appointed special master or a federal public defender who has no standing and represents no party in the case.[2]

## II

## ARGUMENT

### A.  The Special Master's Phase III Investigation is Constitutionally Impermissible

In its motion to terminate the Phase III investigation, the government described legal authority showing that a judicial investigation into the operations and decision-making of a co-equal branch of government is impermissible, without regard to whether there is a factual basis for the inquiry.  [Docket #336, pp. 11-15].  Neither the special master nor the FPD offers contrary legal authority or credibly disputes the authority supplied in the government's motion.

#### 1.  The Special Master's Response Does Not Identify a Legal Justification for the Phase III Investigation.

In his response, the special master initially "takes no position on whether the Court should continue in full, limit, or discontinue the Phase III investigation" and chooses to "not address the points of law offered by the government in its Motion to Terminate."  [Docket #351 at pp. 1-2].[3]

---

[2] On January 4, 2018, the government filed a motion to quash two subpoenas for testimony that the FPD requested after the government had filed its initial motion to quash the earlier FPD subpoenas.  [Docket #360].  The arguments contained herein apply to these later-filed FPD subpoenas as well.

[3] Elsewhere, the special master's response erroneously describes the "central thrust" of the government's motion to terminate Phase III as being based on the absence of evidence of any constitutional violations.  Docket #351 at pp. 6-7.  Although it is true that there is no evidence of any Sixth Amendment violation arising from the government's investigation into contraband smuggling at CCA-Leavenworth, this is not the "central thrust" of the government's motion to terminate Phase III.  The "central thrust" of the government's motion is that this Court "does not have the authority, either directly or through a special master, to conduct an investigation into the internal operations and decision-making of the USAO or DOJ."  Docket #336 at pp. 11-15.  This authority is lacking without regard to whether there is a factual predicate for such inquiry.  The

Later, however, the special master speculates that "the Phase III investigation may reveal reasons for the OUSA to change its own policies and procedures, or for the Court to sanction an attorney for misconduct, or for the Court to conclude a defendant's rights have been infringed" and thus contends that Phase III is "not directed at changing prosecutorial decision-making, in contrast to all of the cases cited by the government." Docket #351 at p. 10. If the special master means to suggest that the speculative possibility of some collateral benefit from his investigation somehow undercuts legal authority showing that the Phase III investigation is impermissible, he is wrong.[4] The appellate court decisions cited in the government's motion make clear that judicial inquiry into the internal operations and decision-making a co-equal branch of government for any reason, no matter how well-intentioned, is forbidden. *See In re United States*, 503 F.3d 638, 641 (7th Cir. 2007) ("These are questions a United States Attorney might well ask of an Assistant United States Attorney; they are not appropriate questions for the Judicial Branch to ask of the Executive Branch. Multiple privileges cover the internal deliberations of the Executive Branch, just as they do for the

---

absence of evidence of any Sixth Amendment violation supports, but is not necessary, for the government's point that Phase III must be terminated. *See id.* at p. 17 ("Even if a federal district court had constitutional authority to conduct its own investigation into the internal operations of the U.S. Attorney's Office, there would be no basis for such an investigation in this case because the defense allegations that triggered the appointment of the special master have proven baseless.").

[4] Each of speculative collateral benefits that the special master posits are problematic in their own right. The legal authorities that the special master cites in support of his attempt to compel documents and testimony from the government – Fed. R. Crim. P. 16 and 17 – are not permissibly used as tools to educate the USAO about its own policies and practices. Further, it is doubtful that a federal court can conduct a wide-ranging inquiry into allegations of misconduct not occurring in the case before it or allegedly committed by attorneys who have not entered an appearance in that case. And, in any event, the special master's investigation is inconsistent with this district's established process for addressing allegations of attorney misconduct. *See* District of Kansas Local Rule 83.6.3. Finally, as noted in the text, neither the special master nor the FPD have suggested why any criminal defendant who alleges that his "rights have been infringed" cannot effectively present his claim in his own case.

Judicial Branch's internal deliberations."); *In re United States*, 441 F.3d 44, 67 (1st Cir. 2006) (explaining that "[a] judge's investigation of a prosecutor's office under the label of government misconduct . . . poses the risk that the line will be crossed 'between executive and judicial roles, and between the formulation and evaluation of positions in litigation'") (quoting *In re United States*, 398 F.3d 615, 618 (7th Cir. 2005)); *In re United States*, 398 F.3d at 617 ("We conclude that the inquiry is inappropriate and must cease . . . ."); *id.* at 619 ("Our legal system does not contemplate an inquisitorial role for federal judges.").  The special master makes no other effort to justify the Phase III investigation.

## 2. The Federal Public Defender's Response Does Not Provide a Legal Justification for the Phase III Investigation.

Without addressing the legal authority cited in the government's motion, the FPD attempts to defend the Phase III investigation by arguing that the government consented to Phase III, thereby waiving its right to object, and that that judicial inquiry is necessary (1) to determine appropriate remedies for "systemic Sixth Amendment violations" and (2) because Phase III "already [has] produced evidence of the United States Attorney's Office's common scheme or plan to repeatedly violate defendants' constitutional rights."[5]  These contentions are meritless.

### a. The Government Repeatedly Opposed an Investigation into Its Operations and Decision-Making.

The FPD first contends that the government has "waived" or "forfeited" its right to contest the Phase III investigation because "[n]ot once did the government object to the Court's authority

---

[5]  The FPD claims the government's motion to terminate Phase III was untimely.  Docket #358, p. 1, n.1.  The FPD is wrong.  The government's motion was made necessary when the special master rejected the government's request that he refrain from issuing subpoenas until after the January 18, 2018 hearing to permit the government to address with the Court its concerns that Article III authority for Phase III is lacking.  Docket #336-1 at p. 6.  Instead, the special master issued the order of production and a subpoena *duces tecum* on December 4, 2017, Docket #317, #336-1 at p. 12, and issued subpoenas for testimony on December 5, 2017.  Docket #336-1 at pp.

to appoint the Special Master to conduct this investigation. The government has thus waived —
repeatedly — any objection to that authority."  Docket #358 at p. 3.  The FPD waiver argument is
factually false and legally irrelevant.[6]

As a factual matter, the record demonstrates that the government repeatedly expressed
opposition to any investigation by the special master into its internal operations and decision-
making.  When the question of the appointment of a special master first arose, the government
agreed only to a limited role, one in which the special master would serve only as a filter for
potentially privileged information.  Docket #133 at pp. 1-2.  In doing so, the government disputed
"the FPD's assertion that the unusual circumstances here give rise to exceptional conditions
warranting a review by the Special Master of the policies and practices of the United States
Attorney's Office."  *Id*. at p. 2.  At a hearing on September 7, 2016, this Court acknowledged the
government's objection: "But what the defendant wants versus what the government wants
[regarding the special master's role] is very different."  Hearing Transcript: 09-07-16 at p. 145.
Later in that hearing, the following colloquy occurred:

> The Court:    So I know the justice-- I know the U.S. Attorney's Office can-- you know,
> agrees that there should be a master appointed, but I need to make a record
> as to whether the U.S. Attorney's Office consents to the process I've just
> outlined. Because if that's the case, then I will be entering an order and that
> order will say that the Department of Justice will pay for this process in the

_____

19, 23, 27, 31, 35, 39, 43.  The government's motion to terminate was timely filed on December
18, 2017, within 14 calendar days of the special master's production order and subpoenas, as
mandated by this Court's appointment order.  Docket #146 at p. 10 ("Pursuant to Rule 53(f)(2),
any party may file an objection to an *order*, finding, report, ruling, or recommendation by the
Special Master within 14 calendar days of the date it was filed . . . .") (Emphasis added).

[6] Although all of the FPD waiver claims in both of its responses are deficient for a host of reasons
as described in the text, it also bears mention that the FPD cites to no authority showing that a
waiver occurs *in the district court* when a party does not raise an objection at the first opportunity
to do so.  Rather, the waiver doctrine applies when a party appeals after having failed to preserve
its claim below.  This matter is, of course, still in the district court, rendering the FPD waiver
arguments inapplicable.

stages that I've described.  So I'll hear from you, Ms. Barnett [Chief of the Criminal Division of the USAO], on that.

Ms. Barnett:  No, Your Honor, we do not consent to that.

The Court:  What do you consent to?

Ms. Barnett:  We consent to having a special master look at the recordings that have been provided to the Court and excise out the material that shows contacts with counsel, either through the phones or through the attorney-client interview rooms at CCA.  Excising that material out. And then the rest of the material that would arguably be permissible evidence for us to use and provide in discovery, then to be given back to the government and to defense counsel in the case so that the case could go forward.

The Court:  So essentially you want to tie the Court's hands and preclude me from fashioning any remedy, other than to give you what you would be entitled to or would want anyway, which would be to have non-privileged communications and to have somebody go through that and do all of that work for you?

Ms. Barnett:  Your Honor, frankly, if the issue is cost, I would certainly be willing to try to sit down with the defense and try to work out another solution. Maybe—

The Court:  The defense can't pay for it.  They don't have a fund. The Court doesn't have a fund.  The Department of Justice has the fund. This isn't a civil matter where the parties split costs. I've done-- I mean, I've looked into that. There's no funding mechanism, other than through Department of Justice, if I'm going to appoint a special master. And Rule 53 says that that has to be done with the consent of the parties. So you're telling me you're not going to consent?

Ms. Barnett:  No.

The Court:  All right. Well, that's fine.  I do have another avenue in mind and I'll just-- I'll just go the other avenue. Because I am going to appoint someone, a master, expert, or otherwise, and I am going to order Justice Department to pay for it, because there's no other funding mechanism available. And we're here because of Justice Department, not because of the defense, not because of the Court, so... All right. I-- I needed to make a record of that because my order will indicate that it's not with the consent of the government . . . .

*Id.* at pp. 148-50.

On October 11, 2016, the Court issued the special master appointment order, which contemplated the possibility that the special master's role could later expand to encompass "additional investigative duties" in order to determine "whether, and the extent to which, the Government has violated the Sixth Amendment and/or Fed. R. Crim. P. 6(e) in this and other criminal cases," despite the government's expressed opposition.  Docket #146 at pp. 7-8.  On October 27, 2016, the government filed a motion asking the Court to reconsider the appointment order.  Docket #163.  Later, in response to a report by the special master, the FPD asked the Court to expand the special master's role:

> Specifically, the defense asks the Special Master to determine the policy and practice of the Kansas USAO in obtaining, reviewing, and disseminating attorney-client communications, regardless of whether the USAO classifies the communication as privileged or not; identify particular cases and how the material was used; and mark the possible constitutional, statutory, and ethical implications. The Federal Public Defender asks the Court to grant these requests for further Orders to the government, CCA, and Securus, and to expand the scope of the Special Master's investigation, as contemplated in the Court's October 11, 2016, Order of Appointing the Special Master.

Docket #188 at pp. 7-8.  The government promptly responded, objecting to any expansion of the special master's role.  Docket #192.  Further, on July 10, 2017, when the special master made a written request for information and documentation as part of the Phase III investigation, Docket #297-7, the government's response included the following passage:

> I would like to bring to your attention authority demonstrating that wide-ranging investigations like this one − particularly in the absence of any evidence that the government has violated the *Black* defendants' constitutional or statutory rights – trigger separation of powers concerns. A district court lacks constitutional and supervisory authority to investigate the operations and decisions of an executive-branch agency like a United States Attorney's Office. This principle was well explained in *In re United States*, 503 F.3d 638 (7th Cir. 2007), a case involving a far more limited judicial inquiry, and one more closely linked to the defendant before the district court, than the wide-ranging investigation here, which seeks information concerning unproven allegations of infringement of the rights of non-parties. . . . When judicial action reaches beyond resolving the claims made by the parties in the matter before it, and extends to conducting investigation designed to

prompt or dictate change in the internal workings of the Executive Branch, serious separation-of-powers concerns arise . . . . Although the district court has authority to remedy any constitutional, statutory, or rule-based violations that are proven to have occurred in this criminal case, it lacks authority to investigate and supervise the internal operations and decisions of the United States Attorney's Office.

Docket #298-9 at pp. 22-24.[7]

Later, in a letter dated November 24, 2017, the government urged the special master not to issue subpoenas until the government had an opportunity to raise with the Court its concerns about the legality of the Phase III investigation. The letter stated in part:

I am sure that it has not escaped your attention that no litigant here has cited to a federal court decision involving a similarly intrusive judicial inquiry into the operations of a co-equal branch of government, and certainly to no appellate court decision endorsing an investigation like yours. I recommend to you *In re United States*, 503 F.3d 638 (7th Cir. 2007), and the other decisions cited at the end of the government's September 12, 2017 response, all of which clearly point in the opposite direction. The Article III and separation of powers limitations described in those decisions are not legal formalities to be disregarded in favor of a Quixotic endeavor to unearth non-existent violations of the attorney-client privilege or promote better relations between the defense bar and the USAO. Rather, they are bedrock principles in our constitutional system of government.

Docket # 336-1 at p. 6.

In short, the government repeatedly put the Court, counsel, and the special master on notice that it opposed the special master undertaking an investigation into its internal operations and decision-making and explained that such an investigation was constitutionally impermissible. The

---

[7] The FPD's claim that the government's September 12, 2017 response to the special master's request for documents and information was itself waived as untimely – a claim that the FPD now makes for the first time and that special master has never made – is untenable. The FPD relies on this Court's orders setting deadlines for formalizing and objecting to an "informal ruling or order" by the special master or responding to a special master's "report." Docket #358 at pp. 9-10. The government's letter dated September 12, 2017 did not object to an informal ruling or order or respond to a report. It responded to a request for information the special master communicated to the United States Attorney. Neither the Court nor the special master set time limits for this response and the special master, who issued a report concerning the government's response, Docket #298, has never complained that the government's letter response was dilatory.

FPD's claim that the government "consented" to the Phase III of the investigation or waived any objection to it finds no support in the record.[8]

### b. Constitutional Limits on Judicial Authority to Investigate the Executive Branch Cannot Be Waived.

Even had the government less vigorously contested the intrusion into its internal operations and decision-making, it would not matter. The government's present position is not, as the FPD mischaracterizes it, that "the Court erred in making the initial appointment." Docket #358 at p. 3. Instead, it is that the Court, either directly or through a special master, lacks constitutional authority to conduct the Phase III investigation. Such a limitation on a district court's power cannot be forfeited or waived. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850–51 (1986) (explaining that when separation of powers principles are "implicated in a given case, the parties cannot by consent cure the constitutional difficulty for the same reason that the parties by consent cannot confer on federal courts subject-matter jurisdiction beyond the limitations imposed by Article III [and that w]hen these Article III limitations are at issue, notions of consent and waiver cannot be dispositive . . . .") (citation omitted); *Keepseagle v. Perdue*, 856 F.3d 1039, 1068, n.6 (D.C. Cir. 2017) ("What is clear, however, is the Supreme Court's admonition in *Schor*: constitutional limits on Article III are not to dangle at the mercy of artfully parsed relinquishment concepts."); *Douglas v. United States*, 814 F.3d 1268, 1280 (11th Cir. 2016) ("The existence of subject-matter jurisdiction as a necessary prerequisite to decide "Cases" and "Controversies" is

---

[8] The FPD's further claim that the government waived or consented to the Court's Phase III order by not seeking reconsideration when the Court issued the order is specious. Docket #358 at p. 7. Even assuming that there were proper grounds for a motion for reconsideration, *see* D. Kan. Rule 7.3; *Voelkel v. General Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan.), *aff'd*, 43 F.3d 1484 (10th Cir. Dec. 21, 1994) (table), there is no authority for the proposition that a timely objection is waived unless a party also moves a court to reconsider after an adverse ruling. *Cf.* Fed. R. Evid. 103(b) ("Once the court rules definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

critical to our Constitution's separation-of-powers principles and the rule of law in a system of limited government.  U.S. Const. art. III, § 2.  That is why litigants cannot waive a lack of subject-matter jurisdiction, and why federal courts have an independent duty to inquire into their own jurisdiction when it may be in doubt."); *Am. Exp. Fin. Advisors Inc. v. Thorley,* 147 F.3d 229, 231 (2d Cir. 1998) ("To be sure, parties cannot by private agreement confer powers on the federal courts that those courts are barred from accepting."); *Endicott Johnson Corp. v. Liberty Mut. Ins. Co*., 116 F.3d 53, 56 (2d Cir. 1997) ("If a court lacks subject matter jurisdiction, that defect is not cured by a purported agreement between or among the parties that a case may be heard in that court."); *see also United States v. Springer*, 875 F.3d 968, 983 (10th Cir. 2017) (challenge to a district court's statutory power to entertain second or successive § 2255 motion without appellate court authorization cannot be waived); *United States v. Tony*, 637 F.3d 1153, 1157–58 (10th Cir. 2011).[9]  And, even if a waiver or forfeiture was both possible and supported by the facts here, the Court should not accept the FPD's invitation that it exceed the scope of its constitutional authority.

    In short, the government repeatedly made its opposition to the special master investigating its operations and decision-making.  But, even had it not done so, this would not matter.  With or without government objection, the Phase III investigation exceeds the scope of the Court's Article III authority.  Neither the special master nor the FPD has offered a meaningful response to the appellate court authority supporting the government's motion, authority that makes clear that termination of the Phase III investigation is required as a matter of law.

---

[9] The decisions that the FPD cites concerning waiver of procedural objections, Docket #358 at p. 7, n.26, p. 8, nn. 27 & 28, have no bearing here.  The government's motion to terminate Phase III does not raise a procedural objection.  It explains that the Court and the special master lack authority to conduct the Phase III investigation.  Neither the special master nor the FPD have presented any contrary legal authority.

### 3. The Federal Public Defender's Claims of Sixth Amendment Violations are Irrelevant and Demonstrably False.

The FPD further responds to the government's motion to terminate the Phase III investigation by alleging "systemic Sixth Amendment violations by the USAO" and a "common scheme or plan by the USAO to violate the Sixth Amendment rights of defendants." As explained below, these hyperbolic claims are unproven and demonstrably false. More importantly however, they have no bearing on the legal authority showing that the special master's investigation is outside the scope of the Court's authority. Although the FPD attempts to justify the unlawful intrusion into the operations and decision-making of the USAO as more efficient than individual defendants asserting their own claims in their own cases, Docket #358 at p. 14-16, neither efficiency nor judicial economy are a legitimate basis for the Court to transgress constitutional limits on its authority. "Even a sensible and efficient use of the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions." *Thomas v. Arn*, 474 U.S. 140, 148 (1985).

Moreover, the FPD's allegations of Sixth Amendment violations, which it has reiterated throughout this litigation without any meaningful attempt to respond to evidence and argument disproving them, are meritless.

First, the FPD refers to the special master's identification of "over 700 video recordings of attorney-client meetings that the government obtained with a grand-jury subpoena," Docket #358 at p. 10, but neglects to mention several critical facts. For one thing, the video recordings are soundless and almost certainly reveal no privileged attorney-client communications. For another, there is no evidence that the recordings were made at the government's request. At the very most, there is some evidence indicating that a prosecutor or agent in a different case (involving a defendant who is not represented by the FPD and who had an opportunity to litigate his claims in

12

his own case) may have viewed a single video of a meeting with counsel.[10]  In short, there is no evidence of any constitutional violations with respect to the subpoenaed CCA-Leavenworth video recordings of inmate-attorney meetings.  For additional discussion of why the soundless video recordings did not reveal attorney-client privileged communications, *see* Docket #336 at pp. 16-17; #298-9 at pp. 11-13.

Second, the FPD notes that "[t]he government routinely and informally obtains recorded phone calls, including attorney-client calls, without ever notifying counsel," Docket #358 at p.10, but fails to acknowledge that all but a very small number of these outgoing inmate telephone calls are recorded only after the inmate has consented to monitoring and recording and both the caller and recipient are warned that the call will be recorded.  Of the small number of inmate-attorney calls that were made to attorney telephone numbers designated as "private" – and thus erroneously recorded without inmate consent and warning to the participants – there is no evidence that any involved privileged communications, that a government official listened to them, or that they were obtained during the investigation or prosecution of this case.  *See* Docket #336 at pp. 17-18; #298-9 at pp. 14-16.

Third, the FPD refers to the lack of candor of a former Special Assistant United States Attorney (SAUSA), who failed to acknowledge to this Court that she listened to inmate telephone calls that involved attorneys (other than FPD attorneys).  Docket #358 at p. 11-12.  But, the FPD ignores that there is no proof that these calls were made to an attorney's telephone number that was then marked "private."   If the calls were not made to a "private" number, then both were

---

[10] Nor does the FPD take into account the special master's conclusion that "the Phase III investigation to date suggests there is only one instance where the OUSA even made a request for video-recordings of meetings at CCA between inmates and their attorneys, and the OUSA did not actually view any such meeting."  Docket #298 at p. 9.

almost certainly recorded after inmate consent and warnings to the calls' participants, and thus not privileged. Nor has it been established that these calls involved communications about legal advice or strategy. *See* Docket #298-9 at p. 16.

This is the sum total of the FPD's purported "substantial evidence of systemic Sixth Amendment violations" and of a "common scheme or plan by the USAO to violate the Sixth Amendment rights of defendants." The FPD attempts to buttress its non-existent "proof" with references to the government's "lack of transparency" and "obfuscation" and "temerity," but these attacks do not supply any evidence. In short, the FPD's accusations do nothing to justify the special master's attempted intrusion into the internal operations and decision-making of a co-equal branch of government.[11]

### 4. The Special Master's Order of Production Must be Vacated and His Subpoenas Must be Quashed.

Because the special master's Phase III investigation is a constitutionally illegitimate intrusion into the internal operations and decision-making of the USAO, his order of production must be vacated and the subpoena *duces tecum* and multiple subpoenas for testimony that he issued must be quashed. Further, the Court should take these actions *before* the January 18, 2018 hearing

---

[11] The special master essentially admits that Phase I and Phase II of his investigation, as well as the pleadings and hearings in this case and the *Dertinger* case, have uncovered no evidence supporting the defense allegations of Sixth Amendment violations. Despite this, the special master expects the government to open its files to him and answer his questions. Docket #351 at p.7 ("Ultimately, these questions remain unanswered . . . because the government has chosen not to produce requested information."). He contends that the government's reliance on this absence of evidence as a basis for terminating Phase III of his investigation is circular reasoning, *id.*, a contention that the FPD joins despite its disagreement with the factual premise, Docket #358 at p. 11. These criticisms of the government's position as "circular" wrongly presuppose that unfounded allegations of constitutional violations are, standing alone, sufficient to force the government to open its files to the Court and even to legal counsel who represents no party to this case. Nothing in the Federal Rules of Criminal Procedure or constitutional or statutory discovery doctrine supports this presupposition.

to prevent witnesses from being compelled improperly to gather documents, travel to Kansas City, Kansas, and appear for the hearing.

**B.  The Federal Public Defender Lacks Standing to Participate in This Case.**

The FPD does not offer any legal authority casting doubt on the legal analysis in the government's motion to quash the FPD subpoenas, analysis that demonstrates that the FPD lacks Article III standing.    Docket #340 at pp. 56-6, 9-10.  Instead, the FPD argues that: (a) it has standing as an "intervener"; (b) the USAO, by its actions or inaction, waived any standing claim, is equitably estopped from challenging the FPD's standing, and invited the Court's erroneous decision to permit the FPD to participate in this litigation; (c) it has standing by virtue of having filed a return of property motion under Fed. R. Crim. P. 41(g); and (d) the government's standing objection has been mooted by the joinder in the FPD's subpoena motions by defendants Carter and Bishop.  The FPD further argues that because of its claimed status in this case, it can compel 16 witnesses, including the United States Attorney, his entire senior management team, and other AUSAs and members of his staff, to appear, produce documents, and testify.  The FPD's position is meritless.

**1.  The Court's Decision to Permit the Federal Public Defender to Act as an "Intervener" Does Not Confer Article III Standing.**

The FPD argues that it has standing because the Court exercised its supervisory power to permit it to participate in the litigation as an "intervener."  Docket #357 at pp. 5-8.  Essentially, the FPD argues that it has standing and can issue subpoenas because the Court permitted it to participate by filing pleadings and making argument.  The FPD cites no authority for the novel proposition that a federal district court can unwittingly confer Article III standing by the simple expedient of permitting counsel to participate in a limited fashion, essentially serving as *amicus curiae*.  And, indeed, this would be inconsistent with the Supreme Court doctrine cited in the

government's motion to quash the FPD subpoenas, which requires that a party to show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision in order to have standing.  Docket #340 at p. 5 (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)).  Here, neither the FPD nor any client whom it represents has shown that it can satisfy any one of these requirements, much less all three.

Instead, the FPD relies (see Docket #357 at pp. 5-6, n.11) on decisions recognizing a limited basis for non-party intervention in a federal criminal case solely for the purpose of asserting the public's First Amendment right of access to the criminal process, which otherwise would go unvindicated because the parties would not advance it.  *See, e.g., United States v. Aref,* 533 F.3d 72, 81 (2d Cir. 2008) ("The Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case . . .  [h]owever, such motions are common in this Circuit to assert the public's First Amendment right of access to criminal proceedings."); *In re Associated Press*, 162 F.3d 503, 507 (7th Cir. 1998) ("In this circuit, we have intimated that the most appropriate procedural mechanism by which to accomplish this task is by permitting those who oppose the suppression of the material to intervene for that limited purpose.").  But, these circumstances are not present here and the FPD identifies no authority granting standing to an attorney in a criminal case in order to represent inmates who are not charged in the case, have not shown that their rights have been violated and, in any event, can assert any constitutional claims that they have in their own cases.  That the Court has permitted the FPD to participate in this litigation in a limited fashion does not justify the FPD's issuance of subpoenas or warrant further participation.  Accordingly, its subpoenas should be quashed.

2.  **The Federal Public Defender's Waiver, Estoppel, and Invited Error Arguments are Legally and Factually Meritless.**

The FPD mischaracterizes the proceedings in this case and relies on this mischaracterization to make the same argument in three different ways, contending that the government waived a standing challenge, is estopped from contesting standing, and invited the Court's erroneous decision to permit the FPD to participate in this litigation. These arguments fail for two reasons: they are legally irrelevant and factually false.

a.  **The Court is Obligated to Consider Article III Standing Without Regard to the Federal Public Defender's Waiver Claims.**

As a legal matter, an Article III-based standing challenge, like the one that the government asserts here, is jurisdictional and thus is not subject to waiver and should be considered by a federal court on its own.  *See, e.g., Lewis v. Casey*, 518 U.S. 343, 349, n.1 (1996) (explaining that Article III "standing . . . is jurisdictional and not subject to waiver"); *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 714 (7th Cir. 2006) (holding that "a challenge to the court's jurisdiction may not be waived" because federal courts are obligated to consider their own jurisdiction); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1014 (9th Cir. 2013) (holding that "the question of constitutional standing is not subject to waiver") (internal quotation marks and citation omitted); *Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 932 (8th Cir. 2013) (noting that "Article III standing . . . cannot be waived"); *United States v. Viltrakis*, 108 F.3d 1159, 1160 (9th Cir. 1997) ("Defendant's initial argument that the Government waived its right to challenge standing on appeal fails because the jurisdictional issue of standing can be raised at any time, including by the court *sua sponte*.").  Thus, even had the government waived its challenged to or invited the Court to permit the FPD's participation in this litigation, the Court must still find that the FPD lacks standing and quash its subpoenas.

**b. The Government Properly Preserved and Did Not Abandon a Challenge to the Federal Public Defender's Standing and This Court Has Never Found that the Federal Public Defender Has Standing.**

Moreover, the FPD's waiver claims are inconsistent with the record. In reality, as explained below, the government challenged the FPD's standing from the outset and this Court deferred a decision on the question of standing.

The FPD's participation in this criminal case began on August 5, 2016, when it filed a motion for return of property under Fed. R. Crim. P. 41(g), Docket #82, which it later amended, Docket #85. In its motion, the FPD named a present client, Robert Buress, and a former client, Jermaine Rayton, and contended that both had a basis to seek a return of property. Docket #82 at p. 2; Docket #85 at p. 2. Others, both parties and non-parties, moved to join, Docket #89, #92, #94, #96, #97, including non-party Richard Dertinger. Docket #92. The government responded to the FPD's Rule 41 motion, as well as the joinder motions, on August 15, 2016. In that response, with respect to the non-party claimants, including those whom the FPD had identified, the government raised a standing challenge:

> [B]ecause Mr. Burress, Mr. Rayton and Mr. Dertinger are not indicted in the present case, they are not parties to this specific litigation and are not entitled to seek relief in this case beyond the request for a protective order for their privileged communications, if any are determined to exist. Instead, each inmate should file a motion in their existing criminal case, or in a civil case that would allow each inmate to address the potential recording of privileged communications by CCA while meeting with their counsel . . . . Each inmate also lacks standing to file motions for the review and/or return of recordings of their (potentially) privileged communications seized as evidence.

Docket #110 at pp. 8-9.

The government's clearly expressed standing challenge was discussed at a hearing on August 16, 2016. During that hearing, the Court referred to the government's response, made clear

that it understood the government to be challenging the FPD's standing, and deferred a decision

on the challenge:

> Yes, it's Document 110, United States' first response to motion and amended
> motion for Rule 41(g) return of information and numerous motions to join.  And I
> have granted those motions to join, but I-- I understand the government's position
> at least on some individuals in terms of, you know, *raising standing arguments,
> including the arguments with respect to the public defender as well*.  Nonetheless,
> *without deciding that issue*, I think this issue is properly before me in terms of the
> defendants in the Lorenzo Black case, *so I intend to proceed with the motions and
> the relief sought, at least with respect to those defendants and perhaps with respect
> to everyone ultimately.*

Hearing Transcript: 08-16-16 at pp. 7-8 (emphasis added).

Later during the hearing, the FPD criticized the government for having challenged its

standing:

> And, Judge, we-- we are stunned by the cavalier response of the government. They
> shrug off the constitutional issues here. That response that they provided to the
> Court, what they talk about is standing. What they talk about is, "We don't have to
> tell you. Go litigate it widespread, let's just disperse this all over the district."

*Id*. at 51.

After more discussion of the standing issue, the Court reiterated its understanding that the

government was challenging the FPD's standing and made clear that it was not deciding the issue:

> And as I stated before, irrespective of that standing issue, there are people here in
> this courtroom that have standing in the Lorenzo Black case. I'm not saying that
> you don't have standing, I just-- I think it's an issue that doesn't really matter for
> purposes of-- of resolving. There are a number of defendants that have moved to
> join, so it's properly before me either way.

*Id*. at p. 60-61.

Under these circumstances, the FPD's claim that the government did not contest its

standing is untenable.  Nor is it credible to argue, as the FPD does, that the government invited the

Court to permit the FPD to participate or that the FPD somehow relied on the government when it

became involved in this litigation.  Apparently aware that the record undermines, rather than

supports its waiver, estoppel, and "invited error" claims, the FPD relies on a passage in a later government pleading to contend that the government "abandoned" its standing challenge. Docket #357 at p. 5, n.7, pp. 8-9. This argument ignores what the government actually said.

In a pleading filed on April 17, 2017, the government set out a description of the history of the litigation in this matter to rebut criticism from the FPD. Docket #237 at pp. 4-6. That discussion includes the following passage:

> Further, *despite reservations about* the propriety of the type of motion filed by the public defender - *the public defender's standing to bring any motion in the matter (not representing a defendant in the case and in fact representing some of the cooperating inmates) - the government deferred litigation of all such issues* to ensure that, first and foremost, the questioned material was safeguarded in a manner approved by counsel. In other words, despite an available litigation strategy focused on procedure, the government chose to forgo that option and address the substantive issue, which deserved appropriate attention and resolution. The government has sought to keep the focus on the substantive issues meriting attention. The public defender, on the other hand, appears to be more interested in questioning the credibility of officers of the court instead of addressing the substantive issues.

*Id*. at p. 6.

The government's clearly expressed description of its decision to *defer* litigation of the standing issue, which came only after this Court chose to defer resolving the government's promptly-made standing challenge, cannot credibly be interpreted as an abandonment of that challenge unless one ignores both the record and the plain meaning of the words that the government used.

The FPD's related arguments are equally untenable. That the government once opposed the FPD's motion for access to grand jury matters by describing the FPD's limited "role as an intervener" hardly qualifies as a waiver or an abandonment of the government's standing challenge considering that the government followed this up by explaining that the FPD's "motion *fails to present a justiciable controversy as no FPD client has been indicted with evidence obtained in this*

*investigation*," Docket #218 at p. 3 (emphasis added).  The FPD's related claim that it was somehow "misled" by the government and relied on this statement to its detriment, Docket #357 at pp. 9-10, strains credulity, especially where the FPD has not identified how it relied on the government's representations or what harm it suffered in this litigation by doing so.

In short, the record does not support the FPD's claims of waiver, estoppel, abandonment, or "invited error."  In reality, the government promptly objected on standing grounds and this Court has permitted the FPD to participate in this litigation while deferring decision on the question of standing.  But now that the FPD seeks to make this Court complicit in an unwarranted and lawless investigation into the internal operations and decision-making of the USAO, including by an abuse of the Rule 17 subpoena power to compel the attendance and testimony of the entire USAO management team, this Court should address the standing issue, determine that the FPD lacks standing, and quash its subpoenas.

### 3.  The FPD's Frivolous Rule 41(g) Motion Does Not Confer Standing in this Criminal Case.

The FPD attempts to fashion a standing claim in this criminal case – where no defendant it represents is charged and the FPD itself is not itself a defendant – because it filed a return of property motion under Fed. R. Crim. P. 41(g) in which it did not identify a single client whose it alleged was aggrieved by an unlawful search or seizure.  To fully explain why this gambit to establish standing fails, it is helpful to briefly describe federal law governing return of property motions under Fed. R. Crim. P. 41(g) (formerly Rule 41(e)), as well as the record regarding the FPD's return of property motion.

#### a.  Legal and Factual Background

Rule 41 of the Federal Rules of Criminal Procedure governs "Search and Seizure."  Among other things, it describes requirements for search warrant applications, Fed. R. Crim. P. 41(b), and

search warrants, *id.* at 41(c), and rules for obtaining, issuing, executing, and returning search warrants, *id.* at 41(d), (e) & (f), as well as a criminal defendant's right to move to suppress evidence. *Id.* at 41(h). Rule 41(g) provides as follows:

> MOTION TO RETURN PROPERTY. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

A return of property motion is a civil, not a criminal proceeding. *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1167 (10th Cir. 2006) (agreeing "with every other circuit that had ruled on the issue in holding that a motion for return of property under Fed.R.Crim.P. 41(g) is civil rather than criminal"); *United States v. Maez*, 915 F.2d 1466, 1468 (10th Cir. 1990) ("Proceedings surrounding the motion for return of property seized in a criminal case are civil in nature, but the interests of judicial efficiency permit a criminal trial judge to rule on the motion."). Accordingly, a Rule 41 motion is "a means by which a criminal defendant can determine her rights in property, and *not a part of the trial and punishment process that is criminal law*." *In re Special Grand Jury 89-2*, 450 F.3d at 1167 (internal quotation marks and citations omitted) (emphasis added). "[T]he remedy provided under Fed. R. Crim. P. 41(e) [now Rule 41(g)] may be available even if there is no criminal action currently pending against the party seeking the return of property. *United States v. Madden*, 95 F.3d 38, 40 (10th Cir. 1996). But, except under circumstances not present here, when a non-party to the criminal case seeks return of property, "the district court should construe the motion as an independent civil action based on equitable principles." *Id*.

On August 7, 2016, the FPD filed an amended return of property motion pursuant to Fed. R. Crim. P. 41(g) despite the fact that it did not represent any charged defendant in this criminal

case.  Docket #85.  The motion explained that one present and one former client were named in the criminal complaint that preceded indictment and that FPD also represented "about 75 clients who are housed at CCA pending trial or sentencing."  Neither the FPD's Rule 41(g) motion, nor its response to the government's motion to quash its subpoenas, alleges any facts showing that any of the FPD's clients was "aggrieved by an unlawful search and seizure of property or by the deprivation of property" as the Rule requires.

The government's response to the FPD Rule 41(g) motion stated in part that "Fed. R. Crim. P. 41(g) is an improper mechanism for bringing this matter before the Court" because:

> The video recordings were provided by CCA pursuant to the service of a subpoena for video footage and still photos. *See United States v. Calandra*, 414 U.S. 338 (1974) (The request for return of property is the equivalent of a motion to suppress implicating the exclusionary rule which does not extend to grand jury proceedings.) As such, these recordings were not "seized" by the government pursuant to a search warrant or warrant exception, making Rule 41 and the Fourth Amendment inapplicable.

Docket #110 at p. 8.  As quoted above at page 18, the government's response to the FPD return of property motion also explained that the present and former clients whom the FPD identified in its motion lacked standing because they were not indicted in the *United States v. Black* case and therefore were required to "file a motion in their existing criminal case, or in a civil case."  *Id*. at pp. 8-9.  This Court has never granted the FPD's Rule 41(g) motion and no district judge has granted any similar motions filed in this district by other inmates as a result of the CCA-Leavenworth investigation.

### b.  Discussion

This legal and factual background demonstrates that the FPD's effort to establish standing in this criminal case by relying on its Rule 41(g) is meritless.

First, Rule 41(g) has no application here because there is no evidence that any FPD client was aggrieved by an unlawful search or seizure as the Rule requires.  Indeed, there is no evidence of *any* search or seizure of property from any FPD client.  The FPD has never identified any aggrieved client or any unlawfully seized property.  A non-party to a criminal case cannot establish standing by filing a wholly frivolous return of property motion.[12]

Second, because no FPD client is a party in this criminal case, the FPD return of property motion, even if it were not frivolous, is a separate civil matter, not part of this criminal case. Accordingly, the FPD cannot use its Rule 41(g) motion as a means of establishing standing in the criminal case or to obtain the right to compel testimony and the production of documents that are unrelated to any search or seizure that is supposed to have served as the basis for its Rule 41 motion.

Third, the FPD's related claim that the government has waived its right to contest "the FPD's Rule 41(g) standing," Docket #357 at p. 13, is both nonsensical and inconsistent with the record.  It is nonsensical because the FPD itself does not claim itself to be "aggrieved" under Rule

---

[12] The FPD relies *on United States v. Rodriguez-Aguirre*, 264 F.3d 1195 (10th Cir. 2001), to suggests that the allegations in its Rule 41(g) motion are sufficient.  Docket #357 at p.12, n.32. But, that decision addressed only whether evidence of *ownership* of illegally seized property is required or whether ownership allegations will suffiice.  264 F.3d at 1206.  *Rodriguez-Aguirre* does not suggest that a Rule 41(g) motion is proper without *either* allegation or proof that there has been *any* search or seizure, much less an unlawful one resulting in government possession of the movant's property.

41(g).[13]  It is false because, as explained above, the government argued from the outset that no

FPD client had standing to seek Rule 41(g) relief in this criminal case.  *See supra* at page 18.[14]

### 4.  The FPD "Constitutional Avoidance" Argument is Meritless.

Finally, the FPD relies on the joinder motions [Docket #337, #339] filed by defendants

Carter and Bishop, who actually are parties to this case, in an attempt to avoid a judicial

determination that neither it nor its clients has Article III standing.  This attempt fails.  Defendants

Carter and Bishop have not themselves sought to subpoena witnesses and indeed, cannot show that

the numerous witnesses whom the FPD has subpoenaed have any testimony or documentation

relevant to the claims that they have asserted in this case.  Indeed, neither Carter nor Bishop (who

raises no Sixth Amendment claims) has offered even a cursory explanation how any FPD-

subpoenaed witness or document has any bearing on his case, much less identified specific and

admissible evidence they plan to elicit from those witnesses as Rule 17 requires.  These patent

deficiencies in the joinder motions are described in the government's responses to the joinder

motions in Docket #354 and #355.  Thus, the FPD asks this Court to circumvent the Article III

---

[13] Elsewhere in its response, the FPD again appears to claim that it – not any of its clients – has standing in this case.  *See, e.g.*, Docket #357 at p. 26 ("As explained above, the FPD's requests do not depend on the Court's investigation but on *its standing* as a guardian of its clients' Sixth Amendment rights.") (emphasis added).  There is no legal support for this novel theory of Article III standing vested in an attorney for non-parties.

[14] The FPD asserts that the government abandoned its standing challenge to the Rule 41(g) in the very same paragraph of its Rule 41(g) response in which it made the challenge, merely by having stated that "the government recognizes that these recordings, and their handling, present unique issues that require the Court's attention."  Docket #357 at pp. 13-14, quoting Docket #110 at p. 10.  The FPD does not explain how the government's express acknowledgement that recordings of inmate-attorney meetings require judicial attention constitutes abandonment of a standing challenge, especially when the government response further explained that "the United States does not waive the presentation of evidence or any arguments it may wish to assert to the allegations made in the hearing on August 9, 2016, before this Court or in the initial motions filed herein."  *Id*.  The FPD's further waiver claim, based on a selective, out-of-context quotation from a later government filing, Docket #357 at p.14, is debunked above at pages 19-20.

standing requirement merely because two defendants who *do* have standing have filed motions to join in the FPD's subpoenas, which seek testimony and documents to which the defendants with standing have no legal right.  Because neither Carter nor Bishop could properly use Rule 17 to compel the testimony or production of the documents that the FPD has subpoenaed in the first instance, their joinder motions cannot serve as a basis to permit FPD, which lacks standing, to do so.

### C.  The Special Master's and Federal Public Defender's Responses to the Government's Rule 17-Based Objections to Their Subpoenas are Meritless.

Even assuming that the Phase III investigation is permissible and that the FPD or a client whom it represents has standing, the subpoenas should be quashed and the production order vacated because there is no legal basis for either,  Without conceding the merit of any of the special master and FPD's arguments in their responses to the motions to quash, the government will focus here on two obvious and fatal deficiencies: (a) the subpoenas are impermissibly investigatory, not evidentiary as Rule 17 requires; and (b) the subpoenas demand documents and seek testimony that are irrelevant to the pretrial claims and to the guilt or innocence of Carter and Bishop, the only two defendants who remain involved in this litigation.

### 1.  The Special Master and FPD Subpoenas Are Investigatory, Which Rule 17 Prohibits.

As explained in the government's motions to quash, Rule 17 cannot be used to circumvent Fed. R. Crim. P, 16 as a discovery device and cannot be used to conduct a "fishing expedition." Docket #340 at p. 7; #341 at p. 5.  But, these are precisely the uses that the special master and FPD contemplate for their subpoenas.

The special master's response to the government's motion to quash his subpoenas, Docket #350, is devoid of any mention of the evidence he proposes to elicit from subpoenaed witnesses

or cull from subpoenaed documents.  Instead, he is only able to describe "known categories of information possessed in the ordinary course of business at the USAO, documents already discussed or informally requested with no response or objection from the USAO, and information discussed or referred to by USAO personnel in open court."  *Id.* at p. 9.  This deficiency is predictable given that the special master is tasked with conducting an *investigation* in this case, and thus clearly is attempting to use subpoenas as an investigatory tool.  Rule 17 prohibits this.[15]

Although the FPD uses the word "evidence" in its response to the government's motion to quash, its attempt to defend its subpoenas fares no better.  The FPD attempts to comply with its obligation to use Rule 17 only to obtain *specific* and *relevant* evidence by saying that it "seeks evidence that will make it more or less likely that the USAO repeatedly violated the defendants' Sixth Amendment rights by examining the past practices of the USAO" and that "will make it more or less likely that the USAO intentionally violated those rights."  Docket #357 at pp. 18-19. Elsewhere, the FPD adds that it "seeks evidence that will go to the credibility of the USAO's witnesses."  *Id.* at p. 19.  These descriptions are so vague as to be meaningless, making clear that

---

[15] Remarkably, the special master argues that his order of production – which demands exactly the same documents and materials as his subpoena *duces tecum*, *compare* Docket # 317 [Order of Production] with Docket #336-1 at pp. 12-17 [subpoena *duces tecum*] – is based on Fed. R. Crim. P. 16, *see* Docket #350 at p. 4, while contending that his subpoena *duces tecum* is based on Fed. R. Crim. P. 17.  But, the special master concedes that "Rule 17(c) is not a broad discovery device to get around Rule 16."  *Id.*  This is tantamount to a concession that, at the minimum, either the special master's order of production is an impermissible use of Rule 16 or that his subpoena *duces tecum* is an improper use of Rule 17.  In fact, both are improper.  The special master's response offers no explanation how Rule 16 empowers him to issue an order of production demanding from the government documents that are not described in any of the categories in Fed. R. Crim. P. 16(a)(1), a subsection that mandates the government to provide pretrial disclosure only to "the defendant."  This abuse of Rule 16 is especially egregious because no defendant in this case has complained of a government failure to satisfy its Rule 16 obligations.  Accordingly, there is no legal basis for the special master's production order, which thus must be vacated.  The special master's reliance on Rule 17 for the identical subpoena *duces tecum* to circumvent Rule 16's restrictions is likewise improper under the very legal principle that the special master describes, which prohibits use of Rule 17 "to get around Rule 16."

the FPD cannot identify any subpoenaed evidence with specificity, as Rule 17 requires, and instead wishes to abuse Rule 17 to conduct an investigation.

### 2. The Special Master and FPD Subpoenas Seek Only Irrelevant Information.

Article III obligates this Court to adjudicate only the case and controversy that is before it. In this case or controversy, only one defendant, Karl Carter, has raised a claim that his Sixth Amendment rights have been violated.[16]  Consequently, even if there was evidence that the government violated the Sixth Amendment rights of any other CCA-Leavenworth inmate (there is not), and even if either the special master or FPD had issued a subpoena that specifically sought specific evidence of such other violations (neither has), that evidence would not be relevant to the case and controversy before this Court.  Thus it would be improper under Rule 17.  Nor can the special master or the FPD defend their subpoenas (or production order) by claiming that they seek evidence relevant to Carter's claims.  Their subpoenas (and production order) make no mention of Carter or any evidence relevant to him and, as a logical matter, the evidence that they seek – which pertains to other CCA-Leavenworth inmates – cannot be relevant to the claims that he raises.  *See* Docket #354.  Indeed, the FPD response essentially concedes that its subpoenas seek only information not relevant to the case or controversy in this case.  Docket #357 at p. 15 ("The FPD seeks evidence relevant to its reasons for intervention: safeguarding the Sixth Amendment rights of its clients and obtaining the return of their confidential communications.").

In contrast, the special master attempts to link his subpoenas and production order to the "allegations in motions of Defendants Carter and Bush [sic] that the USAO's negligence and misconduct have impaired their constitutional rights to a fair trial."  Docket #350.  But, defendant

---

[16] Defendant Bishop has moved to suppress physical evidence based on claims that his Fourth Amendment rights have been violated.  Docket #338.  His claims are wholly unrelated to the FPD's allegations of Sixth Amendment violations of CCA-Leavenworth inmates.

Bishop's claims have nothing to do with the subject matter of the special master's investigation or subpoenas. Docket #338. Further, as explained in the government's opposition to Carter's motion to join the FPD subpoenas, evidence concerning the "claims" that the special master attributes to Carter, Docket #350 at p. 5, "are irrelevant because [Carter's] motion to dismiss is fully resolvable by this Court based on its own facts, without regard to how the government has acted in other cases." Docket #354 at p. 4.

### III

### Conclusion

Neither the special master nor the FPD has explained why the normal operation of the federal judiciary, within the bounds set by Article III, is insufficient to address any legitimate claim by any CCA-Leavenworth inmate that his Sixth Amendment rights have been violated. This Court and other federal courts are empowered and well-equipped to address the cases and controversies that come before them – like defendant Carter's pending Sixth Amendment-based motion to dismiss – without the involvement of a special master or a federal public defender who represents no party and lacks standing. This Court should not permit these non-parties to abuse Rule 17 subpoenas or other aspects of the federal criminal justice system to conduct an unconstitutional investigation of the USAO.

For the reasons stated in the government's motions to terminate the Phase III investigation, to quash the special master's and FPD's subpoenas, and to vacate the special master's production order, as well as the additional reasons provided in this response, the government asks the Court to grant the relief the government has requested. The government further requests that the Court issue its decision, at least on the two Article III threshold issues described herein, before the January 18, 2018 hearing to avoid prejudice to local law enforcement resulting from the

impermissible subpoenas demanding the appearance at the hearing of much of the staff of the

USAO in the District of Kansas.[17]

---

[17] The FPD's response to the government's motion to quash begins with an attack on the integrity of the United States Attorney and his office, which, as the FPD is aware, was not responsible for the government's motion.  Mindful that this Court had adopted the "Pillars of Professionalism," *see* http://www.ksd.uscourts.gov/pillars-of-professionalism-joint-order/, the government denies the truth of the FPD's claims but otherwise refrains from reply.  *See* http://www.ksd.uscourts.gov/pillars-of-professionalism/ ("If the opposing counsel or party behaves unprofessionally, do not reciprocate.").

**Certificate of Service**

I hereby certify that on the 5th day of January, 2018, the foregoing was electronically filed with the clerk of the court for the District of Kansas using the CM/ECF system, which will send a notice of electronic filing to all counsel.

*S/Deanna Lieberman*
Deanna Lieberman
Paralegal Specialist
United States Attorney's Office
Northern District of New York
